The NEWS–JOURNAL COMPANY and Wendy Fox, Plaintiffs,

v.

William T. McLAUGHLIN, Mayor of the City of Wilmington, Leo T. Marshall, Clerk of the Wilmington City Council, and Frank D. Vari, James M. Baker, Wallace E. Brooks, Sr., Norman D. Hughes, James F. Keeley, Richard V. Pryor, Thomas V. Quinn, Jr., Jesse W. Samluk, Frederick C. Sears, II, Joe L. White, and Charles L. Yates, members of Wilmington City Council, Defendants.

Court of Chancery of Delaware, New Castle.

Submitted June 27, 1977.

Decided July 7, 1977.

Richard G. Elliott, Jr., of Richards, Layton & Finger, Wilmington, for plaintiffs.

Michael P. Maguire, of Biondi & Babiarz, Wilmington, for defendants.

BROWN, Vice Chancellor.

This suit is brought by the News-Journal Company, the Wilmington publisher of daily and Sunday newspapers having state-wide circulation, together with Wendy Fox, one of its reporters, seeking a declaratory judgment under the recently enacted Freedom of Information Act as it is now codified at 29 *Del.C.* § 10001 et seq. The defendants are sued in their respective capacities as Mayor, City Clerk and members of the City Council of the City of Wilmington. The relevant facts are undisputed and the matter is before the Court on cross motions for summary judgment.

The Freedom of Information Act, commonly referred to as the "Sunshine Law," became effective on January 1, 1977. 60 *Del.L.* Ch. 641, § 5. A legislative declaration of its policy and purpose is set forth as follows at 29 *Del.C.* § 10001:

> "It is vital in a democratic society that public business be performed in an open and public manner so that the citizens shall be advised of the performance of public officials and of the decisions that are made by such officials in formulating and executing public policy. Toward this end, this chapter is adopted, and shall be construed."

Other portions of the Act provide that all meetings of all public bodies "shall be open to the public" after timely notice of any such meeting shall have been given. An available agenda of the subjects proposed for discussion or action at the meeting is also required. 29 *Del.C.* § 10004(a) and (e). Provision is made for the meeting of the public body in executive session closed to the public under certain specified conditions. 29 *Del.C.* § 10004(b) and (c). However, an executive session can only be called at a meeting otherwise open to the public, 29 *Del.C.* § 10004(c), and, since it is the position of the defendants that the gathering here in question was not one covered by the statutes and since there is no contention that an executive session was called, no defense is claimed based upon this limited statutory right to exclude the public.

The provisions of the statute which do come into play and which govern the outcome of the litigation are contained in the definition of terms found at 29 *Del.C.* § 10002. The definitions pertinent to the present issue are as follows:

"(a) 'Public body' means any regulatory, administrative, advisory, executive or legislative body of the State or any political subdivision of the State including, but not limited to, any board, bureau, commission, department, agency, committee, counsel, [sic] legislative committee, association or any other entity established by an act of the General Assembly of the State, which (1) is supported in whole or in part by public funds; (2) expends or disburses public funds; or (3) is specifically charged by any other public body to advise or make recommendations.

"(b) 'Public business' means any matter over which the public body has supervision, control, jurisdiction or advisory power.

\*       \*       \*       \*       \*       \*

"(e) 'Meeting' means the formal or informal gathering of a quorum of the members of any public body for the purpose of discussing or taking action on public business."

As to the facts of the matter, a regular meeting of the Wilmington City Council was scheduled (and held) on February 3, 1977 at 8:00 p. m. The events giving rise to this suit, however, occurred at approximately 6:30 p. m. on this same date.

The Wilmington City Council is composed of thirteen members, of which at present eleven are members of the Democratic Party and two are members of the Republican Party. The eleven Council members named as defendants here are the eleven Democrats. At approximately 6:30 p. m. on February 3, 1977 these eleven councilmen met at the office of Mayor McLaughlin who, (as is the defendant City Clerk who attended the meeting) is also a Democrat by political affiliation. Certain members of the Mayor's staff were also in attendance.

The purpose of this meeting was to provide the eleven councilmen with a report as to the status of efforts then being made in the State General Assembly to repeal certain statutes found at 22 *Del.C.* §§ 901–906 which, in their effect, provided the basis upon which the City of Wilmington, through ordinance, was authorized to impose and collect a City wage tax. Such a wage tax was then in existence and constituted the basis for a considerable portion of the funds utilized to maintain City government. Repeal of the authorizing statutes would have terminated the authority of the City to collect the tax. The purpose of the meeting was to bring the councilmen up to date on the activities of the General Assembly and to elicit support from those present at the meeting to persuade the General Assembly not to repeal the statutes. From the composition of the gathering, it seems obvious that the criterion for attendance had a political basis.

No notice of this 6:30 p. m. meeting was given. Prior to its occurrence, however, the plaintiff Fox received word from an unidentified caller that there would be an unannounced special meeting of City Council at approximately 6:30 p. m. She immediately called the defendant City Clerk who confirmed that "they were getting together" to talk about the possible repeal of the wage tax. She asked if she could attend

and was given indication that it would be permissible. Upon arrival, however, she was denied admission to the gathering and was told to wait in the office of the City Clerk. Various reasons were offered in support of her exclusion, including the representation that it was an emergency meeting,[1] that it was not a public meeting but rather one being held to discuss party strategy, and that she could not attend because the group could not afford to allow members of the General Assembly to learn in advance of what they might propose to do. Ms. Fox returned to her office, but thereafter attended the regularly scheduled meeting of City Council at 8:00 p. m.

Plaintiffs contend that the gathering of the Democratic councilmen in the presence of the Mayor, the City Clerk and other municipal personnel constituted a meeting of a public body to discuss or take action on public business and that as such the decision of the defendants to meet in closed session to the exclusion of the public, and thus to the exclusion of plaintiffs, was a violation of the Delaware Sunshine Law. The defendants do not dispute that the Council of the City of Wilmington is a public body within the meaning of the statute. Nor do they dispute the fact that eleven councilmen out of the total of thirteen constitute a quorum of the City Council for the purpose of transacting governmental business.[2] They do deny, however, that the meeting was convened for any purpose relating to "public business" as that term is defined at 29 *Del.C.* § 10002(b).

Defendants point out that "public business" is defined as any matter over which the public body has (1) supervision, (2) control, (3) jurisdiction or (4) advisory power. They say that the matter on which the councilmen were to be briefed was the likelihood that the General Assembly would repeal the statutes which empowered to City to levy and collect its wage tax. They say that City Council has absolutely no su-

pervision or control over the General Assembly or the existing statutes then under consideration by it. Likewise, the possible repeal of a State statute is something which does not fall within the jurisdiction of municipal government. Finally, while defendants concede that perhaps everyone has a right to offer advice and opinion to members of a legislative body, they point out that there is no statute or constitutional provision which would give the City Council "advisory power" as to actions taken by the General Assembly. Thus, their argument concludes, the subject matter which brought them together and on which information was provided was not one over which City Council had any supervision, control, jurisdiction or advisory power and, as a consequence, their meeting was not for the purpose of discussing or taking action on public business.

■ What this argument chooses to ignore, however, is the fact that the purpose of the gathering was not merely for academic discussion on the repeal of a statute which would have no effect upon the City. Rather it was to consider possible action by the General Assembly which, if taken, could have abolished the Wilmington wage tax and thereby compelled a restructuring of City finances, both matters over which City Council clearly had control, supervision and jurisdiction. In fact, a repeal of the City's power to impose the tax by ordinance would have deprived the City thereafter of something over which it was then exercising control and supervision. From the undisputed facts I think it without question that the purpose for the meeting, which was predominated by a quorum of City Council, was to discuss a matter of public business within the meaning of the Sunshine Law and to consider the best course of action to be taken in the interests of the City and its inhabitants.

---

**1.** 29 *Del.C.* § 10004(e)(1) provides that statutory notice is not required as "to any emergency meeting which is necessary for the immediate preservation of the public peace, health or safety, . . . ."

**2.** Code of City of Wilmington § 2–204.

Defendants complain that to require such a strategy meeting to be open to the public constitutes an unfair limitation on their ability as majority political party to function as a unified group. As a practical matter, it obviously does. But apparently this is a burden which the General Assembly feels to be outweighed by the benefit that will flow to the citizenry by requiring those in control of public business to exercise it in an open manner. In this regard it has been noted generally that one purpose of sunshine laws is to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremonial acceptance, that rarely could there be any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors, and that a sunshine statute, being for the benefit of the public, should be construed so as to frustrate all such evasive devices. *Town of Palm Beach v. Gradison,* Fla.Supr., 296 So.2d 473 (1974); *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors,* 3rd Dist., 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (1968).

■ Defendants also rely on the recent Pennsylvania decision of *Judge v. Pocius,* 28 Pa.Cmwlth. 139, 367 A.2d 788 (1977) which held that a meeting at which a superintendent of schools gave information to school board members was only a "work session" and not a meeting required to be open to the public under the Pennsylvania sunshine law. From the decision, however, it appears that the Pennsylvania law only applied to meetings where "formal action" was taken. Our law is not so limited. Rather it applies to meetings called to discuss public business as well as to meetings called to take action on public business. Thus the case is readily distinguishable.

■ Defendants further argue, with unassailable accuracy, that the present record is devoid of any indication that the defendant councilmen either discussed anything themselves or decided upon any course of action at the 6:30 meeting. Of course, they are the only ones who would know since all other uninvited persons were excluded. If the Delaware statute is to be liberally construed in favor of the citizens of the State as its policy declaration at 29 *Del.C.* § 10001 intends it to be, then the burden should not be cast upon one asserting a violation of it to establish what the public body actually did and said at a meeting from which he was excluded in order to obtain relief. The statutory definition of a "meeting" found at § 10002(e) seems satisfied when a quorum of a public body gathers "for the purpose" of discussing or taking action on public business regardless of what they might choose to do once convened. Proof of purpose seems sufficient to establish a violation of the statute; proof of that which took place would perhaps have a bearing on the extent of any relief to be granted. In the present case the purpose of the 6:30 meeting is factually conceded and, in my opinion, it dealt with public business within the meaning of the statute.

I therefore conclude that plaintiffs are entitled to summary judgment declaring that the closed 6:30 p. m. meeting of February 3, 1977 attended by the defendant Mayor, City Clerk and the eleven councilmen of the City of Wilmington was in violation of 29 *Del.C.* § 10004(a) which provides that "[e]very meeting of all public bodies shall be open to the public." The motion of the defendants for summary judgment is denied. To the extent that defendants may feel the law to be an infringement on their right to political association, their grievance must be addressed to the General Assembly which has made the policy decision to enact the Delaware Freedom of Information Act in its present form. As stated in *Laman v. McCord,* 245 Ark. 401, 432 S.W.2d 753, 756 (1968), a case interpreting the Arkansas sunshine law;

"Policy decisions such as that are peculiarly within the province of the legislative branch of the government. In this instance that branch has spoken so unequivocally that its command cannot be misunderstood. Our duty is simply to give effect to its mandate."

Plaintiffs are directed to submit a suggested form of order, on notice.