MAX LURIE *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF SKOKIE *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-408

Opinion filed September 12, 1978.

Thomas W. McNamara, Robert L. Byman, and Richard J. Gray, all of Chicago (Jenner & Block, of counsel), for appellants.

Paul Homer, Steven L. Bashwiner, and Elliot L. Bien, all of Chicago (Friedman & Koven, of counsel), for appellees.

Mr. JUSTICE BROWN delivered the opinion of the court:

Six adjacent landowners filed a complaint for declaratory and injunctive relief against the village and its president, seeking to declare various ordinances of the village unconstitutional, invalid, and void. The challenged ordinances were passed to permit the sale of certain municipal property to a developer for the construction of low-income housing for the elderly. The developer, Richard Stein, intervened as a defendant. The trial court granted partial summary judgment for defendants pursuant to section 57 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 57.) Five of the six original plaintiffs filed an amended complaint. A bench trial proceeded, and one remaining plaintiff withdrew on the first date of trial. At the close of plaintiffs' case, the trial court entered judgment for defendants pursuant to section 64(3) of the Civil Practice Act. Ill. Rev. Stat. 1975, ch. 110, par. 64(3).

Plaintiffs appeal from both orders. As one plaintiff was given leave to withdraw as a plaintiff-appellant by this court, there are three plaintiffs-appellants prosecuting this appeal.

The issues presented for our review are whether the trial court erred in granting partial summary judgment for the defendants as to the validity of ordinance No. 76—3—V—900 and whether it erred in entering judgment for defendants at the close of plaintiffs' case.

A chronological recitation of the pertinent facts is essential to the disposition of this appeal.

The village purchased the property at issue herein in 1969 and 1975 at a total cost of $425,322. The property is located at Lincoln Avenue and Galitz Street in the central business district. The two ordinances authorizing the acquisition of the property recited that the land was for municipal purposes, expansion of municipal facilities, and parking. These two ordinances are not challenged. The property is used primarily for parking.

On February 24, 1975, the Village Board of Trustees (Board) adopted a housing assistance plan at a public meeting, after public hearings had been held on the plan. The minutes of the meeting indicate that this plan included low-income housing for the elderly.

Marvin Bailey testified that he was hired by the village in September 1975 to serve as its director of housing development. His primary duties were to implement the Housing Assistance Plan and to find developers for low-income housing. Bailey testified that he first met Richard Stein on November 18, 1975, and had a phone conversation with him prior to that time.

Defendant Stein testified that he had learned in mid-1975 that Skokie was interested in housing development, so he called the village planner. He stated that he received a phone call from Bailey in September 1975

and Bailey said to Stein that he had learned of Stein through Morton Grove newspaper accounts. Stein's Morton Grove project for senior citizens subsidized housing had recently failed to receive the requisite number of votes of their municipal Plan Commission. Stein had secured a commitment from the Illinois Housing Development Authority (IHDA) for funds and rent subsidies for the Morton Grove site.

Stein testified that he had a number of phone conversations and several meetings with Bailey in the latter part of 1975 and early 1976; that he had public meetings with the corporation counsel and the trustees; and that he had meetings other than the Monday night public Board meetings. He testified that at these meetings, his concept for development of the Lincoln-Galitz site was discussed, including his concept for building, for management, and for marketing. He testified that his architects were in contact with various village representatives during late 1975 and early 1976. He stated that he put the figure of $393,000 in the IHDA forms he submitted for the Skokie project.

Defendant Albert Smith, village president, testified that the first public presentation that Stein made that he had an IHDA entitlement for low-income housing for the elderly was at the Board meeting of February 16, 1976. He testified that he and other members of his staff had met with Stein on a number of occasions prior to February 1976, at which time Stein's proposal was developed. He further testified that Stein's IHDA entitlement, but not architectural design, was discussed at these meetings. He stated that several members of the Board attended meetings with Stein prior to February 1976, at which rezoning of the property was discussed.

Peter Dwars, deputy director of IHDA, testified that Stein made his initial application for the Skokie project in January 1976; that the commitment was issued October 1976; that it expired February 1977; that it was extended to March 31, 1977; that it was extended on June 28, 1977; that there was no commitment outstanding from March 31, 1977, to June 28, 1977; that it expired on October 6, 1977; and that there is a board of directors' resolution which would allow the commitment to be extended to December 28, 1977. He testified that only the IHDA board of directors can commit a project and the length of time to complete the process varies, although it can be as fast as 16 to 18 months. He stated that IHDA will not issue a commitment to more than one developer for the same piece of property and that HUD-FHA will not issue a commitment for a project on which IHDA has already committed.

On December 31, 1975, the Village Plan Commission recommended amendments to the "R-5 Low Rent Housing for the Elderly" zoning classification to the Board. The recommended amendments included the deletion of the 60,000 square feet minimum lot size requirement. The Plan

Commission's report to the Board stated as follows: "The lot size of the Armond King project formed the basis for the 60,000 square feet requirement and as a result several other smaller parcels in the Village which would make excellent sites for low-income elderly housing units cannot currently be considered for R-5 zoning." At a public meeting on January 12, 1976, the Board unanimously concurred with the Plan Commission's recommended R-5 amendments.

Plaintiff Schmitt testified that she first learned of the proposed development in early 1976 when she received notice of a public meeting. Plaintiffs Schmitt and Harkess testified as to their expectations when they purchased their respective property that the Lincoln-Galitz property would be used for public parking.

At the Board's public meeting of February 16, 1976, Bailey announced that IHDA had approved Stein's request to transfer 150 elderly housing subsidies to the Lincoln-Galitz property. He further reported that Stein proposed to purchase the property for $393,000 and to construct 150 units. The Board adopted a motion directing the corporation counsel to draft an ordinance authorizing the negotiated sale of village-owned property to a private developer, and a specific resolution, under the ordinance, for the sale of the land at Lincoln Avenue and Galitz Street to Richard Stein. The Board adopted a motion directing the Planning Department to advertise the case for a public hearing and directing the Plan Commission to review it for rezoning.

The ordinance and resolution were drafted and introduced at the Board's public meeting of February 23, 1976. The ordinance (76—3—V—900) and resolution thereto were adopted by the Board by a vote of 5 to 2 at its public meeting of March 1, 1976. The Board also adopted an ordinance (75—3—Z—902) which embodied the Plan Commission's recommended R-5 amendments. Sometime thereafter, Stein and the village entered into a real estate sales contract calling for Stein's purchase of the property for $393,000 and its development as low-income housing for the elderly.

At the Plan Commission's public meeting of March 4, 1976, which plaintiff Schmitt attended, the Plan Commission voted to: (1) recommend rezoning the Lincoln-Galitz property from B-5 Central Business District to R-5 Low Rent Housing for the Elderly; and (2) recommend approval of the site plan. Its report to the Board included both recommendations, and additionally recommended 13 conditions be imposed for approval of the site plan. At the Board's public meeting of March 29, 1976, the Board voted to concur with the recommended rezoning from B-5 to R-5 and voted to concur with the recommended site plan approval subject to the 13 conditions.

An appropriate ordinance was introduced at the Board's meeting of April 12, 1976. On April 19, 1976, the ordinance (76—4—Z—908) was

adopted by the Board which rezoned the Lincoln-Galitz property from B-5 Central Business District to R-5 Low Rent Housing for the Elderly and which approved "the site plan presented by the developer of the said property dated March 1, 1976 and revised March 19, 1976," subject to the 13 conditions.

Plaintiffs filed their complaint on May 18, 1976.

Counts I and II sought to invalidate and restrain enforcement of ordinance No. 76—4—Z—908. Count I attacked the ordinance on theories of special legislation and contractual and conditional zoning. Count II alleged that plaintiffs had purchased their properties in reliance that the property would be used for municipal purposes, and that the ordinance violated their Federal and State constitutional rights as a taking without just compensation or due process.

Counts III, IV, and V sought to invalidate and restrain enforcement of: (1) ordinance No. 76—3—V—900, which authorized the sale, by majority vote of the corporate authorities at whatever price the authorities deem appropriate, of village-owned property to private persons for low income housing and which stated that its provisions supercede the fair market value requirement and three-fourths vote requirement for acceptance of a bid of section 11—76—2 of the municipal code of 1961 (Ill. Rev. Stat. 1975, ch. 24, par. 11—76—2); and (2) the resolution under the ordinance which authorized the sale of the Lincoln-Galitz property to Richard Stein and which authorized the village president to execute the real estate sales contract attached thereto. Count III alleged that ordinance No. 76—3—V—900 was invalid in that it approves the disposition of village property at a price which may be below fair market value, which action is not within the power of local government units under article VII of the Illinois Constitution; and that the resolution thereunder is invalid because enacted under an invalid ordinance, for an inadequate price, and in violation of the "Open Meetings Act" (Ill. Rev. Stat. 1975, ch. 102, pars. 41-46). Count IV alleged that the resolution and real estate sales contract were invalid because approved without compliance with the notice and bidding requirements of "An Act to authorize the sale or lease of air rights by municipal corporations * * *" (Ill. Rev. Stat., ch. 85, pars. 1061-1063) and because they set a price for the property which is below "Fair Use Value," contrary to sections 2 and 3 of the Act (Ill. Rev. Stat., ch. 85, pars. 1062 and 1063). Count V alleged that ordinance No. 76—3—V—900 is an invalid exercise of home rule powers and an *ad hoc* enactment resulting from a course of individualized bargaining, negotiation and contract rather than general legislation; and that the resolution thereunder was invalid since not adopted by three-quarters of the corporate authorities, as provided in section 11—76—2 of the Illinois Municipal Code (Ill. Rev. Stat., ch. 24, par. 11—76—2), and that it authorizes the disposal of real

estate without proper notice or bidding and at less than fair market value, in contravention of section 11—76—2 (Ill. Rev. Stat., ch. 24, par. 11—76—2).

On January 10, 1977, defendants moved for partial summary judgment, pursuant to section 57 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57), with respect to counts III, IV, and V of the complaint. On March 29, 1977, during argument on the motion, the trial court expressed concern over the lack of bidding. Stein testified that sometime between March and June, 1977, after one of the court sessions, his attorneys told him that "the Village should publish and go for bid on the property," that he told them it was permissible to give up his rights under the real estate sales contract, and that his attorneys informed him at the time that he ran the risk of not being the successful bidder. Defendants contend in their brief in this court that the court session Stein referred to occurred on March 29, 1977. Stein's June 10, 1977, letter to the corporation counsel acknowledged that some other bidder may be successful and he therein expressed his willingness, in that event, to release his contractual rights and assign his interest in the property to the successful bidder.

On May 18, 1977, the trial court entered an order granting partial summary judgment for defendants. The trial court found, among other things, that ordinance Nos. 76—3—V—900 and 76—4—Z—908 were validly enacted pursuant to the village's home rule powers; reserved ruling on the issue of whether the resolution under ordinance No. 76—3—V—900 was a valid exercise of the village's home rule powers; and reserved ruling on the issue of whether compliance with the "Open Meetings Act" was necessary.

At the Board's meeting of May 23, 1977, an ordinance (77—6—V—1010) was read which directed the sale or lease of village land through public bid for the construction of low income housing for the elderly. It referred to the Lincoln-Galitz property. Also read was an ordinance which amended ordinance No. 76—4—Z—908 by: (1) deleting all references to and findings of fact pertaining to "a developer or proposed developer or to a site plan or site plans" in No. 76—4—Z—908; and (2) which affirmed the rezoning of the Lincoln-Galitz property from B-5 to R-5 in No. 76—4—Z—908.

Both ordinances were adopted by the Board on June 6, 1977.

Notice for bids was published on June 23, June 30 and July 7, 1977. The deadline for receipt of bids was July 25, 1977. Only Stein had submitted a bid by the deadline date. On August 22, 1977, the Board unanimously chose Stein as the successful bidder. On September 5, 1977, the Board approved a real estate sales contract with Stein.

Plaintiffs filed their amended complaint for declaratory and injunctive relief on September 8, 1977. Count I of the amended complaint alleged

that the two ordinances adopted in June 1977 were proposed, drafted and adopted pursuant to a private agreement between Stein and the village; that Stein agreed to waive his rights under the real estate contract and the resolution for assurances that he would be the successful bidder under the new ordinances; that the ordinance for the sale of the property (77—6—V—1010) was constructed and the bidding requirements were drafted in such a manner as to ensure that Stein would be the successful bidder; and that ordinance Nos. 76—3—V—900, 75—3—Z—902, 76—4—Z—908, and the two new ordinances are all part and parcel of a private, negotiated deal between Stein and the village which is illegal, ultra vires and fraudulent. Count II of the amended complaint incorporated by reference the allegations of count I and alleged that plaintiffs had purchased their properties in reliance that the property would be used for municipal purposes, and that ordinance No. 76—4—Z—908, as originally enacted, violated their Federal and State constitutional rights as a taking without just compensation or due process.

Trial proceeded on November 16 and 30, 1977. Plaintiffs withdrew their allegation of fraud upon the commencement of trial.

Defendant Smith testified that in a normal bid situation, the village would send individual notices to people on the village's bid lists whom it had reason to suspect would be interested in making a bid. He denied that he or any of the trustees had made a deal or agreement that Stein would become the successful bidder, and that they had sought and hoped for additional bids. He described the village's unsuccessful efforts to expand its existing units at Armond King through the Cook County Housing Authority, and expressed the hope that the funds would come through IHDA. He testified that he had spoken to three or four other developers, some prior to the time the property was "announced for bid" in about July 1977. He further testified as follows:

> "MR. BYMAN: Do I understand you to mean, sir, that if you get an IHDA commitment, you would be happy to talk about low-income housing?
>
> SMITH: Absolutely. We have a need, and that's the only way we could solve it.
>
> MR. BYMAN: The IHDA commitment was always the core of the discussion?
>
> SMITH: Yes.
>
> * * *
>
> MR. BASHWINER: "In response to Mr. Byman's inquiry concerning the IHDA commitment, were you interested in the construction of low-income housing in Skokie or the way it was financed?
>
> SMITH: We were interested in the construction of low-income

housing. But the only financing that we know of to be available at this time is the financing coming through the entitlements given out by IHDA. I don't know of any other units being built that would meet our criteria."

Plaintiff Schmidt testified that she had no knowledge with whom Stein made a deal at the village.

Plaintiff Harkess testified as follows:

MR. BASHWINER: " * * * Your concerns and your testimony arise not because Mr. Stein is going to build the projects, is that correct?

HARKESS: No, absolutely not. Absolutely not, whether Mr. Stein is going to build it. My total and complete objection is to the site that it is being placed upon."

Bailey testified that he had drafted the bid ordinance in the summer of 1977. He testified that the only significant difference between Stein's bid proposal and his proposal as it existed before the ordinance was the fact that Stein now proposed to pay $400,000 for the property instead of $393,000. Bailey further testified that neither he nor anyone on behalf of the village had a secret deal with Stein for the latter to become the successful bidder. He stated that he had discussions with several developers about low-income housing for the elderly prior to the time of the bid ordinance. He testified that there was nothing in the bid ordinance which required a developer to have an IHDA commitment, but that it did require some evidence of availability of mortgage financing and rent subsidy.

Stein testified that he received no tangible consideration for his waiver of his rights under the real estate sales contract, and that at the time of the release, he had "well over" $100,000 invested in the project. He testified that he learned that the property was up for public bid from notices published in two newspapers, and it took a day or two to prepare his bid. Stein denied that there was a private deal to make him the successful bidder. Stein testified that he submitted a higher bid because the public knew what his prior proposal was, and other bidders could bid at a slightly higher figure than his original figure. Stein testified that the village insisted that Stein sign the letter releasing his rights in the real estate sales contract.

At the close of the plaintiffs' case on November 30, 1977, the trial court granted defendants' motion for judgment pursuant to section 64(3) of the Civil Practice Act.

On December 29, 1977, plaintiffs filed their notice of appeal from the orders entered May 18, 1977, and November 30, 1977.

We proceed to a consideration of the issues presented in this appeal.

■■ The first issue raised by plaintiffs is that the trial court erred in

granting partial summary judgment for the defendants pursuant to section 57 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 57.) They allege error only with respect to that portion of the order which found ordinance No. 76—3—V—900 to be validly enacted pursuant to the village's home rule powers. They argue that the sale of municipal real estate is a matter of statewide concern, and elimination of the three-fourths vote requirement of section 11—76—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—76—2) is not a matter pertaining exclusively to the local government and affairs of the village of Skokie. Defendants respond that this matter is moot since the private sale was rescinded and the sale to Stein was by public bidding. We find that this issue is moot, since the Board by *unanimous* vote chose Stein as the successful bidder after the project was let for public bid. Indeed, at the oral argument of this cause, plaintiffs' counsel admitted that this issue is moot.

The second issue raised by plaintiffs is that the trial court erred in entering judgment for defendants at the close of plaintiffs' case pursuant to section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 64(3)). Plaintiffs contend that the evidence supports the following conclusions: (1) that village officials designated Stein as the site developer in violation of the "Open Meetings Act" (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*); (2) that village officials engaged in conditional or contract zoning in enacting ordinance No. 76—4—Z—908; and (3) that there was a conspiracy between Stein and the village to choose Stein as the successful bidder.

Defendants argue that plaintiffs' burden of proof with respect to legislative decisions of the municipality is to present clear and convincing evidence of their allegations, citing *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 66, 349 N.E.2d 399.

We agree that plaintiffs had to prove the invalidity of ordinance No. 76—4—Z—908 by clear and convincing evidence. (*City of Evanston.*) Whether the ordinance is invalid as conditional or contract zoning is to be determined by the tests set out in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65. (*Goffinet v. County of Christian* (1976), 65 Ill. 2d 40, 51-52, 357 N.E.2d 442; *Pioneer Trust & Savings Bank v. County of Cook* (1st Dist. 1977), 49 Ill. App. 3d 630, 638, 365 N.E.2d 913.) However, we find that the question is moot as ordinance No. 76—4—Z—908 was amended on June 6, 1977. The ordinance adopted that date deleted all references to and findings of fact pertaining to "a developer or proposed developer or to a site plan or site plans" in ordinance No. 76—4—Z—988, thereby excising the complained of provisions and conditions from ordinance No. 76—4—Z—908.

Plaintiffs argue in their brief in this court that their evidence amply

supports a *prima facie* case for declaratory relief, citing *Jackson v. Navik* (2d Dist. 1976), 37 Ill. App. 3d 88, 346 N.E.2d 116. However, at the oral argument of this cause, plaintiffs' counsel admitted that plaintiffs' burden of proof was by a preponderance of the evidence. We agree, in view of *Rosee v. Board of Trade* (1st Dist. 1976), 43 Ill. App. 3d 203, 238, 356 N.E.2d 1012, 1036, wherein this court stated:

"It has been frequently held that in this type of proceeding [section 64(3)] the trial court should not consider the evidence in the light most favorable to plaintiff [*Pedrick*]; but it is obliged to weigh the evidence, to draw reasonable inferences therefrom, to determine the credibility of the witnesses and then to make a final judgment and enter judgment for defendant if the plaintiff has not proved his case by a preponderance of the evidence. * * *"

Plaintiffs contend that prior to the Board's public meeting of February 16, 1976, at which Stein's proposal was first made public, Stein had private meetings with village officials in violation of the "Open Meetings Act" (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*). They argue that the result of these meetings was the designation of Stein as the site developer. Section 2 provides in pertinent part:

"All meetings of any legislative, executive, administrative or advisory bodies of the * * * villages * * * and any subsidiary bodies * * * including but not limited to committees and subcommittees . . . shall be public meetings." Ill. Rev. Stat. 1975, ch. 102, par. 42.

■■ The question is moot because the project was subsequently let for public bid. In *Illinois News Broadcasters Association v. City of Springfield* (5th Dist. 1974), 22 Ill. App. 3d 226, 228, 317 N.E.2d 288, the court set forth the three criteria to be considered in determining whether a question comes within the public interest exception to the mootness rule:

"(1) the public nature of the question, (2) the desirability of an authoritative determination for the future guidance of public officers, and (3) the likelihood of future recurrence of the question."

In the instant case, the facts reveal that it is the intention of the village officials to increase the village's low-income housing for the elderly. They were unsuccessful in their attempts to receive more funds from the Cook County Housing Authority for an expansion of the existing 125-unit Armond King development. It is uncontradicted that a housing problem for low-income, elderly persons exists in Skokie; at trial, Smith testified that there were approximately 650 eligible persons lined up. Since future meetings with other developers are bound to occur in the pursuit of the village's goal, unquestionably a goal in the interest of the public, we find

that the "Open Meetings Act" question meets the three criteria for application of the public interest exception.

The evidence in the case at bar does not support a finding that deliberations occurred at the meetings Stein had with the various village officials prior to February 1976. In *People ex rel. Hopf v. Barger* (2d Dist. 1975), 30 Ill. App. 3d 525, 536 n. 6, 332 N.E.2d 649, 658 n. 6, the court defined deliberation as an " '[a]ct of deliberating, or a weighing and examining the reasons for and against a choice of measure' and '[a] discussion and consideration by a number of persons of the reasons for and against a measure.' " Over the course of these meetings, Stein's proposal was developed. We believe these meetings were an opportunity for the village officials to express their need and desired requirements for low income housing for the elderly to be built on what they considered to be a suitable site, and to explore what an experienced developer could do for the village in this regard. Stein's proposal was not submitted for deliberation prior to the Board's public meeting of February 16, 1976. Under the facts and circumstances of this case, we find that defendants did not violate the "Open Meetings Act" (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*).

Plaintiffs' final contention is that a conspiracy between Stein and the village to choose Stein as the successful bidder should be inferred from the following circumstances:

(1) Stein released his rights in the sales contract for no tangible consideration when he had $100,000 or more invested in the project;

(2) The Village accepted the release despite the time it had invested with Stein's proposal;

(3) The Village believed that IHDA was the only source for rent subsidies;

(4) The Village knew Stein had an IHDA commitment;

(5) The ordinance included the requirement that bidders supply evidence of availability of rent subsidy and mortgage financing;

(6) IHDA never issues a commitment to more than one developer for the same piece of property;

(7) The Village departed from its normal notification procedure in failing to send individual notices to persons it suspected would be interested in bidding;

(8) Stein learned that the property was up for public bid from notices published in two newspapers;

(9) Bidders had only 30 days to submit a complete bid proposal.

Ordinance No. 77—6—V—1010 requires the bid proposal to "Supply evidence of availability of rent subsidy and mortgage financing." (Section 4.10.) Section 6 of the ordinance provides that the village shall have 30

days, commencing with the published deadline for receipt of bid proposals, to review all such proposals. Section 8 of the ordinance provides that a successful bidder shall have not more than 60 days from the date the Board accepts a bid to provide written evidence, satisfactory to the Board, that he has secured mortgage loan financing and Federal housing subsidy commitments sufficient to finance the construction of the development and subsidize the rents of qualified low income elderly tenants in the completed building.

The notice for bids was published June 23, June 30 and July 7, 1977. The deadline for receipt of bids was July 25, 1977. The notice provided that bid packages listing all bid requirements could be obtained from the village's purchasing agent, and included the provisions of sections 6 and 8, *supra*, but not the provisions of section 4.10, *supra*.

Any bidder had 33 days (June 23, 1977, to July 25, 1977) to submit "evidence of availability of rent subsidy and mortgage financing." (Section 4.10.) Assuming the Board accepted a bid on the first day of the 30-day bid review period (July 25, 1977), that bidder would have 60 days therefrom to provide written evidence that he had secured mortgage loan financing and Federal housing subsidy commitments. (Section 8.) Thus, any bidder had a minimum of 92 days to secure a rent subsidy commitment from a Federal Government agency. There is no evidence which shows that an IHDA commitment would meet this requirement, except that Smith testified that the village officials believed IHDA funds were the only funds available.

The deputy director of IHDA testified that IHDA will not issue a commitment to more than one developer for the same piece of property. There is no evidence which shows that the village knew or should have known this to be a fact before the ordinance was adopted.

There is no evidence which shows that the village knew or should have known the approximate length of time it would take a bidder to secure a rent subsidy commitment from a Federal Government agency before the ordinance was adopted.

The deputy director of IHDA testified that Stein made his initial application for the Skokie project in January 1976, and the commitment was issued October 1976. His testimony supports the conclusion that Stein had an IHDA commitment from June 28, 1977, to October 6, 1977. At the Board's public meeting of February 16, 1976, Bailey announced that IHDA had approved Stein's request to transfer 150 Elderly Housing subsidies to the Lincoln-Galitz property (apparently from the Morton Grove project). From the foregoing, the village should have known that it took Stein 9 months to obtain an IHDA commitment prior to the adoption of the ordinance.

Smith testified that the village had sought and hoped for additional

bids, and that he had talked to other developers, both before and after the ordinance was passed. Bailey also testified that he had spoken with other developers prior to the adoption of the ordinance. Plaintiffs have failed to cite, and our research has not disclosed, any law which would require the village officials to send individual notices or otherwise personally contact prospective bidders in the situation presented by this case.

We find no impropriety as regards the release, which the village properly demanded from Stein and received.

■ A conspiracy may be inferred from circumstances. (*Zokoych v. Spalding* (1st Dist. 1976), 36 Ill. App. 3d 654, 668, 344 N.E.2d 805.) The circumstances of the instant case do not support a finding that there was a conspiracy between the village officials and Stein to choose Stein as the successful bidder. Ordinance No. 77—6—V—1010 was not designed to insure that Stein was the only person who could meet its requirements.

For the aforementioned reasons, we conclude that the trial court did not err and its decision was not against the manifest weight of the evidence. Accordingly, the orders of the circuit court of Cook County are affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.