THE PEOPLE *ex rel.* THOMAS J. DIFANIS, State's Attorney for Champaign County, Plaintiff-Appellee, *v.* JOAN BARR *et al.*, Defendants-Appellants.

Fourth District   No. 15464

Opinion filed November 28, 1979.

TRAPP, J., dissenting.

Hatch, Nicol, Blockman & McPheters, of Champaign, and James Kuehl of Finch & Kuehl, of Urbana, for appellants.

Thomas J. Difanis, State's Attorney, of Urbana (Joseph D. Pavia, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The State's Attorney filed this action under the Open Meetings Act (Ill. Rev. Stat. 1977, ch. 102, par. 41 *et seq.*) to obtain a declaratory judgment that members of the Urbana city council may not meet in closed session to discuss city council business. According to the facts stipulated by the parties, an Urbana city council meeting was scheduled for Monday evening, October 23, 1978, at 7:30. The preceding Friday, two of the defendants decided that they should hold a caucus for Democratic members of the city council a few hours before the scheduled meeting. The caucus was set for 6 p.m. on October 23, 1978, and eight of the nine Democrats on the city council, along with one independent member, attended. The press did not receive notice of the caucus, and the public was not invited. Issues on the agenda for that night's city council meeting as well as issues not on the agenda were discussed at the caucus. The defendants stipulated that they have had these meetings in the past and will continue to do so unless this case holds otherwise. The Urbana city council has 15 members, with a quorum requiring the presence of 8 members.

The trial court ruled that the October 23, 1978, caucus violated the Open Meetings Act, that political caucuses are not exempt from the Act, that the Act is constitutional, and that the Act must be complied with whenever three or more members of the Urbana city council meet to discuss city council business.

■■ The Open Meetings Act declares as public policy that meetings and deliberations of public bodies should occur in the open, rather than behind closed doors. The first section of the Act explicitly states this policy:

"It is the public policy of this State that the public commissions, committees, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly." (Ill. Rev. Stat. 1977, ch. 102, par. 41.)

The second section of the Act states the extent of the application of the Act to the meetings of different public bodies:

"All meetings of any legislative, executive, administrative or advisory bodies of the State, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue, shall be public meetings * * *. This Act does not apply to the General Assembly or to committees or commissions thereof." Ill. Rev. Stat. 1977, ch. 102, par. 42.

At the beginning of the fiscal or calendar year, bodies subject to the Act must publish a schedule of the year's meetings and provide public notice of the schedule by posting a copy at the body's office, or if none, at its regular meeting place; the schedule of meetings must also go to newspapers and radio and television stations that have filed an annual request for such notice. For special, rescheduled, or reconvened meetings, the body must notify the public at least 24 hours in advance and the media in the same manner that members of the body are notified. (Ill. Rev. Stat. 1977, ch. 102, pars. 42.04, 42.03.) Furthermore, meetings must be held at places and times convenient to the public. Ill. Rev. Stat. 1977, ch. 102, par. 42.01.

The State argues that the Open Meetings Act requires that the so-called caucuses of the Democratic members of the city council take place in public and be open to the press and the public. The defendants argue that the Open Meetings Act does not apply to political caucuses. The Act does not define the word "meeting."

The leading Illinois case on the Open Meetings Act is *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 332 N.E.2d 649. In *Hopf*, two members of the five-member city council, the city attorney, the city manager, an attorney, and an owner of land met privately to discuss the sale of a parcel of land to the city council. *Hopf* ruled that the meeting was held in violation of the Open Meetings Act, and that the Open Meetings Act applies even when fewer than a quorum are present.

In *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors* (1968), 263 Cal. App. 2d 41, 69 Cal. Rptr. 480, an appellate court applied the California sunshine law, called the Brown Act, to a private meeting held by five county supervisors, counsel, the county executive, the county director of welfare, and several members of the area's central labor council. This group had met at the local Elks Club to discuss a strike by the social workers' union against the county. Like the Illinois sunshine law, the California version did not then and still does not define the word "meeting." In holding that the meeting had violated the Brown Act, the court in *Sacramento* said that interpreting the word

"meeting" to decide what deliberations fall within the scope of the law requires analysis of the statute's objective and the nature and purpose of the gatherings and meetings covered by the legislation.

In *News-Journal Co. v. McLaughlin* (Del. Ch. 1977), 377 A.2d 358, a Delaware court ruled that under that State's sunshine law the plaintiff-newspaper had the right to attend closed meetings held by certain members of the Wilmington city council. As in this case, the defendants in *News-Journal Co.* called their meeting political. Several hours before a scheduled city council meeting, the 11 Democrats on the 13-member council met privately with the Democratic mayor and city clerk; the court recognized that attendance at the meeting was obviously based on political affiliation. The purpose of that meeting was to discuss the possible repeal by the State legislature of a law authorizing the city to tax local wages, and the mayor said that the meeting was called to inform the other Democrats on the council of the progress of the repeal measure and to seek their support against the repeal. The *News-Journal Co.* court rejected the defendant's argument that their meeting was only a political strategy session and therefore not subject to the Delaware sunshine law, viewing this characterization of the meeting as a ruse designed to evade the purpose of the law. The defendants also argued that their meeting was outside the scope of the sunshine law because they did not discuss public business. The Delaware law defines public business as matters over which the body in question has "supervision, control, jurisdiction or advisory power." The defendants contended that because they had no control over what the legislature did, the closed meeting was not a discussion of "public business." The court interpreted the definition broadly and said that with repeal of the wage tax authorization, Wilmington would be pressed to find another source of revenue. The close connection of the topic discussed with city finances made the subject one of "public business."

Illinois has a great affinity for creating governmental bodies to conduct business: according to the State Board of Elections, in 1978, we elected 40,457 of our citizens to government positions. This number alone suggests not just high cost and minimum efficiency but also a penchant for conducting public affairs in a fish bowl. One who aspires to public office chooses the center ring for his deliberations. If the public officer cannot stand the attention and limelight of the center ring, he should remember that although serving in public office may be hard, departing from the public scene is easy. The purpose of the Open Meetings Act is clear and unambiguous. The people's representatives must meet openly, or else the people risk having their business done in secret, with the possibility that private deals will supplant the public interest. Characterizing a meeting as a political caucus should not distract attention from the real purpose of

the meeting. In this case, the stipulation of facts does not list party business as one of the subjects discussed at the meeting. All the subjects listed are properly business of the city council, and some of the subjects discussed were in fact on the agenda for the council meeting that night.

A number of Illinois cases interpreting the Open Meetings Act should be distinguished. In these cases, either the facts were different from here, or the court did not give full play to the scope and intent of the Act. *Lurie v. Village of Skokie* (1978), 64 Ill. App. 3d 217, 380 N.E.2d 1120, interpreted the word "deliberations" too narrowly when it ruled that private meetings between a developer and members of the village council did not violate the Open Meetings Act.

In *Bigham v. City of Rock Island* (1970), 120 Ill. App. 2d 381, 256 N.E.2d 897, the plaintiff attacked the validity of a zoning change that had been referred by the city council to a meeting of the council sitting as a committee-of-the-whole in executive session. At an open meeting later, the city council unanimously adopted its own recommended change. The court ruled that the Open Meetings Act had not been violated because plaintiffs had offered no evidence that any action concerning the zoning change had been taken at the committee's meetings. The court found the official action in the record vote, rather than in the recommended change.

In *Pope v. Parkinson* (1977), 48 Ill. App. 3d 797, 363 N.E.2d 438, the Open Meetings Act was correctly held not to apply to a private meeting of the University of Illinois Assembly Hall advisory committee, a body outside the intended scope of the Act. The eight members of the committee had been informally appointed by the university chancellor and served at his will. Furthermore, the committee acted strictly as an advisory group to university administrators and had no power of its own. Also, the committee neither had been appointed by nor was subsidiary to any public body. This lack of any connection to a body covered by the Open Meetings Act distinguishes *Pope* from the instant case.

The Open Meetings Act contains several exceptions to its rule requiring open meetings. For example, school boards may meet privately to discuss employment decisions. (Ill. Rev. Stat. 1977, ch. 102, par. 42.) The Act does not exempt political caucuses from its scope, unlike the sunshine laws of some other states. For example, the West Virginia and Utah statutes define "meeting" in a way that excludes caucuses (W. Va. Code Ann. §6—9A—2 (1979); Utah Code Ann. §52—4—2 (Supp. 1979)).

The Illinois Attorney General has published numerous opinions on the applicability of the Open Meetings Act to various gatherings. In Attorney General Opinion S—726 (1974), the Attorney General cited *Sacramento Newspaper Guild* to support a broad application of the Open Meetings Act. The Attorney General said that a meeting need not be prearranged, occur at an official meeting place, or have a quorum present.

for the Open Meetings Act to apply to the gathering. Still, the Act does not apply to every gathering of two or more members of a public body. The Attorney General said that the circumstances in the particular case must be analyzed to decide whether a gathering is a meeting within the scope of the Act. Not every encounter between members of a public body is subject to the Open Meetings Act. In some cases, members could meet socially and discuss business and still not run afoul of the Act. According to the Attorney General, the facts of the particular case will determine whether the meeting is a gathering.

Attorney General Opinion S—1007 (1975) said that the county central committee of a political party may meet privately. This is a true political caucus. In the instant case, however, council members were meeting as council members, although they were mostly Democrats, and not as a committee of a political party.

The defendants argue that the Open Meetings Act is unconstitutional for several reasons. The defendants first argue that the Open Meetings Act violates their rights of free speech and assembly guaranteed by the first amendment of the United States Constitution and article I, sections 4 and 5, of the Illinois Constitution. The plaintiff contends that the Act does not restrict the expression of ideas, that greater restrictions on speech have been upheld, and that the Act regulates only the time, place, and manner of speech.

The Open Meetings Act neither prohibits the expression of any idea, nor makes assembly illegal; the Act requires merely that public bodies meet and deliberate public business openly rather than behind closed doors. The defendants' free speech argument is misplaced. The first amendment to the United States Constitution and article I, section 4, of the Illinois Constitution guarantee the right to express ideas publicly, and the Open Meetings Act does not restrict that right in any way. The defendants in effect argue that the freedom of speech gives them the right to confer privately rather than publicly about public business—business about which they have power to act. Freedom of speech protects the expression of ideas, not the right to conduct public business in closed meetings. The same reasoning applies to the defendants' argument that the Act infringes on their right of free assembly.

Greater limitations on speech have been upheld as not violating first amendment freedoms, as when the political activities of certain groups are restricted. *Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 349 N.E.2d 61; *United States Civil Service Com. v. National Association of Letter Carriers* (1973), 413 U.S. 548, 37 L. Ed. 2d 796, 93 S. Ct. 2880.

Defendants argue that the Open Meetings Act is too vague and contains too many undefined, ambiguous words to satisfy the constitutional-requirement of due process. When persons of ordinary intelligence

must guess at the meaning of a law, the law violates due process. (*Hershey Mfg. Co. v. Adamowski* (1961), 22 Ill. 2d 36, 174 N.E.2d 200.) *Hershey* involved a statute prohibiting gambling devices on military bases "of the first class." Because no branch of the armed services designated bases by class, the restriction was ambiguous and incapable of being applied. The Illinois Supreme Court, unwilling to guess at the meaning of that phrase, held the statute unconstitutionally vague. But this rule does not invalidate statutes merely because persons may interpret them differently. No law can be so clear and extensive that it will provide in advance for all cases that may arise. We must tolerate at least a modicum of ambiguity and uncertainty, because the prescience of even the most ingenious drafters is finite. The human imagination is limited, and the variety of circumstances great: the meaning of a statute is honed on the cases that are not anticipated but do arise.

■ Defendants also argue that the Open Meetings Act violates the equal protection clauses of the United States and Illinois constitutions because the Act does not apply to the General Assembly and creates a classification bearing no rational relationship to a permissible governmental objection. The test to determine if classifications violate equal protection is whether the difference in treatment invidiously discriminates. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.) Distinctions not based on race, alienage, or gender are upheld if rationally related to a legitimate governmental interest. This standard is toothless, and almost any hypothetical purpose will support the classification. (*People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 291 N.E.2d 807.) The classification made in the Open Meetings Act, distinguishing the General Assembly from all other governmental bodies in Illinois, falls within the least suspect group. The Illinois Constitution contains provisions regarding when the General Assembly may meet in closed sessions. A two-thirds majority vote is always necessary, but unlike the Open Meetings Act, the constitutional provision permits closed meetings for the discussion of any topic. Thus, the two schemes are designed to meet similar problems, yet do not contain identical provisions. The General Assembly may well have thought that a different approach was required for the meetings of local public bodies. A rational basis for the different classification exists. *Hopf* dealt with the same equal protection question and ruled that the defendants had failed to carry the burden of showing the lack of a rational relationship between the chosen means and the desired end.

Finally, defendants contend that the Open Meetings Act violates article IV, section 13, of the Illinois Constitution, which prohibits the General Assembly from enacting special or local legislation. The

defendants argue that the Open Meetings Act is special legislation because it does not apply to the General Assembly. The courts apply the equal protection test to determine whether a law has special legislation. (*Sanko v. Carlson* (1977), 69 Ill. 2d 246, 371 N.E.2d 613; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325.) The party arguing that the legislation is special must show that the distinction made by the General Assembly is arbitrary and unreasonable, bearing no rational relationship to a legitimate governmental interest. The courts do not have to inquire what the General Assembly's rationale may have been. The burden on the party attacking the classification is heavy, and the defendants have not met it in this case.

The stipulated facts with which we deal raise only the issue of the meeting held and denoted a caucus. We here determine that that meeting was within the purview of the Open Meetings Act. In addition to the foregoing, the trial court determined that the Act would be applicable to meetings of three or more persons. Such determination is not within the purview of the issue presented, and upon this record is but a gratuitous observation. While we affirm the order declaring the meeting at issue to be within the scope of the Act, we make no judgment upon the so-called "rule of 3" as enunciated by the trial court.

Judgment affirmed.

REARDON, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:
The order of the trial court should be reversed for the reason that the construction of the statute imposed is not what the statute says.

Section 1 of the Open Meetings Act (Ill. Rev. Stat. 1977, ch. 102, par. 41) states as policy an intent that "the public commissions, committees, boards and councils and the other public agencies * * *" shall function in such manner "that their actions be taken openly and that their deliberations be conducted openly."

Section 2 of the Act (Ill. Rev. Stat. 1977, ch. 102, par. 42) provides that "[a]ll meetings of any legislative, executive, administrative or advisory *bodies* of the State, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary *bodies* of any of the foregoing * * *" (emphasis added) shall come within the provisions of the Act. The succeeding paragraphs state the exceptions which permit closed sessions by "any *body* covered by this Act," and repeatedly refers to the several public corporate entities as a "body." The emphasis by the legislature upon the functioning of the

public body as organized for the conduct of business is apparent, *i.e.*, its act as organized under law. By its terms, the statute makes no reference to, and imposes no limitation upon members who are acting as individuals outside of the structure of the "body."

This construction was adopted in *People ex rel. Cooper v. Carlson* (1975), 28 Ill. App. 3d 569, 328 N.E.2d 675, where the court affirmed the dismissal of an action in *mandamus*. A county board established a committee which in turn hired certain staff members who investigated and administered certain developmental programs and regulations. The latter met voluntarily with some regularity to discuss their work. Plaintiff sought to have it held that such staff constituted a "body" so that its meetings were subject to the provisions of the Act. In holding that the staff was not a "body" within the ambit of the Act, the court stated that there was no statute, ordinance, or resolution or other official action by the county board or its committee designating the staff as a public body or a subsidiary body. That opinion remarked that no motions or resolutions were presented, no votes taken or recorded, and no matters of deliberation recorded other than by an individual's personal notes. This court reached the same conclusion upon comparable reasoning in *Pope v. Parkinson* (1977), 48 Ill. App. 3d 797, 363 N.E.2d 438. In *Pope*, the trial court ordered *mandamus* to require that the meetings of an advisory group be subject to notice and open to the public, pointing out that "[n]o statute creates the Committee or defines the limits of its authority." 48 Ill. App. 3d 797, 799, 363 N.E.2d 438, 441.

In this case, the voluntary group meeting in what is termed a "caucus" has no attributes of public authority or structure. It appears that participation is voluntary, has no organizational structure, takes no action, and makes no decisions concerning the public matters.

The majority opinion relies upon *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 332 N.E.2d 649. That opinion does not address this issue for the defendants raised as an affirmative defense that the business covered was the proper subject of an "executive session" of the city council. Again, in *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors* (1968), 263 Cal. App. 2d 41, 69 Cal. Rptr. 480, all members of the county board were present with the county executives. It was, in fact, conceded that the meeting was a board function for it was contended that the meeting was justified to maintain and protect the attorney-client privilege.

The council has 15 members. The portion of the trial court's order which requires notice compliance when three or more members of the council meet cannot have a rational basis. The concept may have originated in the injunction issued in *Sacramento Newspaper Guild*, where that number constituted a quorum of the "body." (263 Cal. App. 2d

41, 48 n. 4, 69 Cal. Rptr. 480, 486 n. 4.) It seems interminable nonsense to direct that three individual members of such a council cannot exchange information or views without being subject to criminal penalties.

It is appropriate to conclude that this court should construe the statute as it is written, rather than to read into it conclusions or considerations in opinions of the courts of other States which were considering different statutes. In *People ex rel. Carruthers v. Cooper* (1949), 404 Ill. 395, 400, 89 N.E.2d 40, 43, the court said:

"The function of this court is to construe the statute in accordance with the normal import of the words used, whatever its opinion may be regarding the desirability of results produced by the operation of the statute."

See also *People v. Erskine* (1977), 53 Ill. App. 3d 948, 369 N.E.2d 164.

In the light of the provisions which direct the statute to the meetings of legislative, executive, or administrative "bodies" and the opinions of the Illinois courts construing that term, I would reverse the order of the trial court.