THE PEOPLE *ex rel.* WILLIAM V. HOPF, State's Attorney for the County of Du Page, Plaintiff-Appellee, *v.* RALPH H. BARGER, Mayor of the City of Wheaton, *et al.*, Defendants-Appellants.

(No. 74-35;

Second District (1st Division)—July 15, 1975.

526

528

Gerald J. Brooks, of Naperville, for appellants.

John J. Bowman, State's Attorney, of Wheaton (Frank Petru and Malcolm F. Smith, Assistant State's Attorneys, of counsel), for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The People on the relation of the State's Attorney of Du Page County petitioned the circuit court for a writ of mandamus praying that the defendants, who were the city officials of Wheaton, be commanded to comply with what is commonly called the "Open Meetings Act" (An Act in relation to meetings—Ill. Rev. Stat. 1971, ch. 102, par. 41 *et seq.*).[1] The motion of the plaintiff for summary judgment based on the various pleadings and upon depositions was granted, and the writ of mandamus issued. In addition to strictly commanding defendants to comply with the provisions of the applicable statute, the court order required defendants to make available to the public any and all minutes and notes and any and all of the defendants' depositions of a meeting of November 6, 1972, described as an executive session closed to the public. Defendants appeal.

The petition for mandamus included the allegations that the defendants participated in a closed meeting of the Wheaton city council on November 6, 1972; that the matters discussed concerned, in part, the annexation and zoning of property; and that the public was excluded in violation of the law. Defendants first filed a motion to dismiss the petition which was denied. They then answered, denying the matters alleged in the petition and pleading as an affirmative defense that the meeting of November 6, 1972, was a properly noticed, properly constituted executive session of the city council and that the matters discussed, including land acquisition, were a proper subject for an executive session. The defendant mayor and the defendant councilmen were granted immunity to testify, and their depositions were taken together with the testimony of several other witnesses.[2]

---

[1] Section 2, in applicable part, provides:
"All meetings of any legislative, executive, administrative or advisory bodies of the State, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing * * * except for * * * (d) meetings where the acquisition of real property is being considered, or where a pending court proceeding against or on behalf of the particular governmental unit is being considered, but no other portion of such meetings may be closed to the public, * * * and (g) meetings at public institutions of higher education relating to campus security or to the safety of staff and students. This Act does not apply to the General Assembly or to committees or commissions thereof." Ill. Rev. Stat. 1971, ch. 102, par. 42.

[2] The immunity which the mayor and councilmen were given was from the section of the Open Meetings Act that provided:
"Any person violating any of the provisions of this Act shall, upon conviction, be punished by a fine of not more than $100, or by imprisonment in the county jail for not more than 30 days, or by both such fine and imprisonment." Ill. Rev. Stat. 1971, ch. 102, par. 44.

Thereafter, the trial court dismissed Mayor Barger as a defendant because it appeared that he had not taken part in the meeting. In entering the order the court noted that there were not any notes or minutes taken at the meeting.

The defendants contend: that the Open Meetings Act denies equal protection of the law because it excludes the Illinois General Assembly from its coverage and also excludes closed meetings by institutions of higher education concerning campus security; that the Act is discriminatory and compels violation of the attorney-client privilege since the municipal body cannot seek the advice of counsel on the merits of contemplated litigation other than pending litigation; that since the defendants, because of lack of a quorum at the meeting, were unable to act as the city council and since the defendants were not an appointed committee of the city council, they were not properly made parties defendant; that the State's Attorney enforced the act in a discriminatory manner; that the Act did not apply to these defendants as councilmen of a home-rule unit; and that the evidence does not support the order which was entered.

The plaintiff answers that the defendants lack standing to raise the constitutional issues, that other objections have been waived, that the Act is applicable and that the order, finding defendants in violation of the Act, is based on sufficient evidence.

It appears from the record that the only persons present at the meeting in question were the defendants William Fuller and Ronald Brown, who were councilmen of the city of Wheaton, Gerald Brooks the city attorney, the city manager, attorney Hartman Stime, and a Mr. Elliott. The meeting was held in City Manager Carroll's office. The meeting was closed to everyone except the councilmen who were present and the other persons mentioned. It appears that the group talked about the city acquiring 6 acres of property owned by Elliott for a public golf course and that the property was part of a larger tract subject to a proposed annexation agreement between the city and one KPK Corp., a development company, which was represented at the meeting by Attorney Stime. The proposed annexation agreement had been discussed at prior city council meetings which were open to the public about six or seven times. There was further evidence in the depositions that an extension of a street was discussed and that Stime made a presentation on behalf of KPK Corp. as to what the development company would do with the land if it were successfully annexed and the city rezoned the land to allow for a multiple-family development. The meeting was characterized as informational in nature and not a negotiating session.

Although the parties do not raise the issue directly, a preliminary

question which must be examined is whether mandamus is a proper remedy under the circumstances.

■■ We are aware that the statute specifically provides that where the Act is not complied with "or where there is probable cause to believe" that it will not be complied with, the court shall issue a writ of mandamus requiring that a meeting be open to the public "or issue such other appropriate order as will insure compliance" with the provisions of the Act (Ill. Rev. Stat. 1971, ch. 102, par. 43). The propriety of ordering that a mandamus writ issue when it cannot affect a meeting already held and which applies to municipal duties generally is questionable, however. As a general rule, the writ will not issue to compel a useless act or to decide questions which no longer exist merely to establish precedent. (*Retail Liquor Dealers Protective Association v. Schreiber* (1943), 382 Ill. 454, 459. See also *Flynn v. Kucharski* (1972), 53 Ill.2d 88, 91.) It will also not issue where the court would be regulating the general course of official conduct or enforcing the performance of official duties generally. *Retail Liquor Dealers Protective Association v. Schreiber* (1943), 382 Ill. 454, 459; *People ex rel. Jansen v. City of Park Ridge* (1955), 7 Ill.App.2d 331, 333.

The propriety of the issuance of the writ here, to the extent that it compels general compliance with the Open Meetings Act, would appear to be an attempt to regulate the general course of official conduct contrary to the cited authorities, especially since there is no indication that any future meeting by the same parties is scheduled or even contemplated. The portion of the writ which orders the publication of the notes and minutes of meeting would appear to refer to a useless act in view of the statement of the court that no minutes or notes were taken. The portion of the order making the depositions public is beyond the relief prayed (see *People ex rel. Greenwell v. Board of Supervisors* (1908), 234 Ill. 62, 67) and additionally would seem to refer to a useless act since the depositions became public records in the proceedings in the trial court.

■■ However, even where the relief sought in a petition for mandamus becomes moot it does not necessarily follow that the cause should be dismissed when the issues presented are of substantial public interest. (*Reynolds v. Conti* (1971), 132 Ill.App.2d 505, 507.) We conclude that the case before us is an appropriate one for the consideration of declaratory or injunctive relief when the substance of the petition is emphasized over its form. (See *People ex rel. Scott v. Kerner* (1965), 32 Ill.2d 539, 542-543.) In *Kerner*, the supreme court noted that mandamus may be an appropriate means "for the simultaneous determination of issues of statutory constitutionality and the enforcement of rights in-

itially determined to exist in the proceeding awarding the writ." 32 Ill.2d 539, 545. See also *Phelps v. Bing* (1974), 58 Ill.2d 32, 35. Compare *Illinois News Broadcasters Association v. City of Springfield* (1974), 22 Ill.App.3d 226, 228.

We next consider the argument that the defendants lack the legal status or "standing" to raise the particular constitutional issues.

■■ We have previously reviewed the principles which are applicable to the question of "standing" as the term is used in the sense (referred to in *Baker v. Carr* (1962), 369 U.S. 186, 204) that the defendants have " 'such a personal stake in the outcome of the controversy as to assure * * * concrete adverseness * * *.'" (*Phillips v. Village of Libertyville* (1970), 120 Ill.App.2d 172, 181-183.) In *Phillips*, we note as corollary to the *Baker v. Carr* definition of "standing" that the court will not consider the invalidity of a provision where the party urging it is not aggrieved by its operation. (*Phillips v. Village of Libertyville* (1970), 120 Ill.App.2d 172, 181. See also *People v. Bombacino* (1972), 51 Ill.2d 17, 19-20; *People v. Handley* (1972), 51 Ill.2d 229, 233; *People v. Reiner* (1955), 6 Ill.2d 337, 341.) Another related rule is that in order for a court to consider a constitutional argument the situation to which the argument relates must be presented by the facts of the case. (*People v. Braun* (1910), 246 Ill. 428, 431-32.) And in addition, a litigant may not challenge a classification scheme on the basis that the classifications are discriminatory unless that litigant is a member of the class allegedly being discriminated against. (*Board of Education v. Bakalis* (1973), 54 Ill.2d 448, 467.) The courts, however, will not adhere to the limiting rules affecting standing where the unconstitutional features are of such a character as to render the entire act void.[3] *People v. Palkes* (1972), 52 Ill.2d 472, 480-81; *Edelen v. Hogsett* (1969), 44 Ill.2d 215, 220.

In the case before us the defendants seek to challenge the statute on the grounds: that the Open Meetings Act violates the equal protection clause because it created an arbitrary, capricious and irrational classification when it subjected public officials to possible criminal sanctions for violations while exempting members of the State legislature; that the Act

---

[3] Although not cited, we are aware of *People ex rel. Isaacs v. Johnson* (1962), 26 Ill.2d 268, 271, and its general statement that public officials may question the constitutionality of legislation. The statement is made in the context of the rule which formerly prevailed in mandamus proceedings, that is, that a public official could not assert the unconstitutionality of a statute in an mandamus proceeding as a defense to his refusal to perform a duty. The court in *Isaacs* noted that this was no longer the law, stating that public officials can raise the constitutionality of a statute as a defense in a mandamus proceeding. We cannot conclude that this broad statement in the opinion was intended to give a public official an automatic status which would allow him to make every kind of a constitutional challenge to legislation unhindered by any of the traditional limitations previously expressed.

violates equal protection standards because it treats members of the same class differently, that is, institutions of higher education may hold closed meetings on campus security while city and high schools may not make security the subject of a closed meeting; and that the Act compels a violation of the attorney-client privilege because the public officials subject to the Act's coverage may not hold a closed meeting, in confidence, with their attorney to discuss the merits of bringing suit, but may only discuss pending litigation.

■■ Under the rules just discussed, we conclude that defendants do have standing to urge alleged constitutional defects in the Open Meetings Act to the extent that they can show that the provisions apply to them in their private or official capacity and that they have been injured by the application of the statute or suffer likely exposure to future injury.

■■ On this basis we must first conclude that defendants may not be heard to argue that the statute is unconstitutional because institutions of higher learning may make security a subject of a closed meeting while cities and high schools may not. There has been no showing that defendants either privately or in their public capacity have been or ever will be aggrieved or injured by the application of this provision. Nor has there been a showing that the provision relating to security has in any way been a subject matter of this litigation.

There may, of course, be cases in which one who is within the class of persons affected by legislation but who can show no actual injury or grievance may be allowed to make the claim that the Act is unconstitutional "on its face" rather than as applied to him.[4] In this case, however, we find none of the compelling reasons articulated in *United States v. Raines* (1960), 362 U.S. 17, 4 L.Ed.2d 524, 80 S.Ct. 519, to depart from the accepted limitations on mounting a "facial" attack on the constitutionality of a statute.

■■ The defendants do, however, have "standing" to claim that the statute is unconstitutional because the individual defendants may be subject to criminal sanctions while State legislators and their committees are exempted from such sanctions. The fact that no arrests were made in this instance and that certain of the defendants testified under a grant of im-

---

[4] See *Berger v. New York* (1967), 388 U.S. 41, 18 L.Ed.2d 1040, 86 S.Ct. 1873, explained in *United States v. Ramsey* (7th Cir. 1974), 503 F.2d 524, 528-530. As noted in *Ramsey* a strong claim of unconstitutionl application as to the defendant was advanced in *Berger*, but the main thrust of the opinion was that any overbroad application of an eavesdropping statute would have a "chilling" effect on basic constitutional freedoms. We find no parallel between an eavesdropping statute and legislation which provides that in all except certain circumstances meetings of public bodies shall be open to the public.

munity does not assure them that they may not subject themselves to future criminal penalties under what they allege to be an unconstitutional statute. We view this as a sufficient showing of standing under the cited case.

We will therefore consider the merits of the contention that the statute is violative of the constitutional provisions guaranteeing equal protection embodied both in the fourteenth amendment of the Federal Constitution and in article I, section 2, of the Illinois Constitution.

■■ The equal protection clause does not prevent a State from drawing lines that treat one class of individuals differently from another so long as the classifications do not amount to invidious discrimination. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 359, 35 L.Ed.2d 351, 354, 93 S.Ct. 1001, 1003.) Under the traditional equal protection test a legislative classification will be sustained unless it is patently arbitrary and bears no rational relationship to a governmental interest. (*Frontiero v. Richardson* (1973), 411 U.S. 677, 683, 36 L.Ed.2d 583, 589, 93 S.Ct. 1764, 1768.) The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 35 L.Ed.2d 351, 358, 93 S.Ct. 1001, 1006. See also *People ex rel. City of Salem v. McMackin* (1972), 53 Ill.2d 347, 363-4; *People v. McCabe* (1971), 49 Ill.2d 338, 340.

■■ Upon analysis, the exemption of the General Assembly from the provisions of the Open Meetings Act does not create a classification which amounts to invidious discrimination, nor can we conclude that it is patently arbitrary, with no rational relationship to governmental interests. As the Act was structured in 1972, a public official in violation of the Act was subject to a possible $100 fine and/or 30 days in jail. (Ill. Rev. Stat. 1971, ch. 102, par. 44.) The penalty has since been increased through the classification of a Class C misdemeanor with a possible $500 fine and/or 30 days in jail (Ill. Rev. Stat. 1973, ch. 102, par. 44).[5] Although excluded from the Act and its penalties, the General Assembly is required under the Illinois Constitution (Art. IV, sec. 5(c)) to hold its meetings open to the public unless two-thirds of the members vote to close the meetings. And under other statutory provisions members of the General Assembly who violate their constitutional duties are subject to penalties including fine and imprisonment. (Ill. Rev. Stat. 1971, ch. 38, par. 33—3.) In a sense, the General Assembly is held to a greater re-

---

[5] See Ill. Rev. Stat. 1973, ch. 38, pars. 1005—5—3(d)(3) and (d)(4), 1005—8—3(a)(3), and 1005—9—1(a)(3).

striction than the bodies covered by the Open Meetings Act. Before the General Assembly can hold any secret meeting it must have two-thirds of all of its members in concurrence, while the Open Meetings Act allows closed meetings on certain exempted subject matters without regard to member concurrence. We conclude that a proper governmental purpose can arguably be served by the classification and that the defendants have not succeeded in their burden to rebut the presumption that the classification is valid.

We next consider defendants' contention that the Open Meetings Act compels violation of the attorney-client privilege, because it forbids the municipal attorney from advising his client in private on the merits of bringing or defending litigation except concerning "pending suits."

■■ Consistent with our previous analysis we hold that defendants have standing to raise this issue so that they may have guidance in creating an ethical relationship with their attorney in the public interest without subjecting themselves to prosecution under the Act.

The defendants argue that the Act prevents the municipal body from having any private discussion with an attorney as to any contemplated but not yet "pending" litigation. This, they contend, creates an irreconcilable conflict between the attorney-client privilege (held applicable to municipalities in *In re Sanitary District Attorneys* (1932), 351 Ill. 206, 225) and the ethical obligations of lawyers to guard the confidence of their clients as mandated by the Illinois Code of Professional Responsibility adopted by the Illinois Bar Association and other lawyers groups.

The State's Attorney contends that the defendants may not make this argument since there was no discussion at the closed meeting concerning a suit. In addition, he argues that any claim to the attorney-client privilege was waived when defendants held the meeting with other parties present, and that, in any event, the Open Meetings Act and the Canons are capable of concurrent operation.

■■ The relationship between attorney and client does, of course, invoke policies based on the public interest even though there is no statutory declaration that communications between attorney and client are "privileged". The statement of these policies is most often found in cases which discuss the rights to discover information under supreme court discovery rules, and they suggest that the "privilege" is to be strictly construed as an exception to the general duty to disclose. (See, *e.g., Golminas v. Fred Teitelbaum Construction Co.* (1969), 112 Ill.App.2d 445, 448-449.) The rules adopted by the organized bar are another recognition of the lawyer-client relationship from the viewpoint of the lawyer's ethical and legal obligations. The basic question is one of

reconciling the policy favoring the disclosure of information with the lawyer's duty to provide effective and ethical legal representation of a client which in this case is a public body.

The people's access to information is the basis of public understanding of governmental decisions so that their elected representatives will be responsive to them and under their ultimate control. But disclosure of all forms of information preliminary to decision-making may prevent the efficient administration of governmental functions and thus adversely affect the public interest. The balancing of these countervailing factors is the basic problem.

The legislature has articulated the policy behind the Open Meetings Act in section 1 of the Act:

> "It is the public policy of this State that the public commissions, committees, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly." (Ill. Rev. Stat. 1973, ch. 102, par. 41)

The instances in which the general policy is to be overcome, presumably so that the government can efficiently manage, are made exceptions to the Act. The exception which defendants argue makes the Act discriminatory and compels violation of the attorney-client privilege if interpreted literally states:

> "(d) * * * where a *pending* court proceeding against or on behalf of the particular governmental unit is being considered * * *". (Emphasis added.) Ill. Rev. Stat. 1971, ch. 102, par. 42.

The oft-stated cardinal rule of statutory construction is that a statute must be construed so as to give effect to the legislative intent. (See, *e.g.*, *People ex rel. Cason v. Ring* (1968), 41 Ill.2d 305, 310.) The clear intention of the legislature expressed in the Act favors, of course, open *deliberation* [6] as well as open action. (Ch. 102, par. 41.) We may not construe a statute in the way which will defeat that legislative intention. See, *e.g.*, *Niles Improvement Association v. J. Emil Anderson & Son, Inc.* (1968), 93 Ill.App.2d 167, 172.

■■■ We must agree with defendants' contention that "pending" cannot be reasonably interpreted to include preliminary discussion with an attorney to secure advice on either the bringing of suit or the defense

---

[6] "Deliberation" is defined in Webster's New International Dictionary (2d ed.) as: 1. "Act of deliberating, or a weighing and examining the reasons for and against a choice or measure; * * *. 2. A discussion and consideration by a number of persons of the reasons for and against a measure. * * * 4. *Obs.* * * * A consultation".

of a suit which is either threatened or likely to be brought against the city. "Pending" is defined in Black's Law Dictionary (4th ed. 1951) as "[b]egun, but not yet completed." The traditional concept of litigation begins in terms of "notice, pleading, trial and appeal" (See *In re Estate of Stith* (1970), 45 Ill.2d 192, 194), and presumably it is at that point that the litigation is "pending."

This reasoning, however, does not lead us to conclude that the General Assembly intended, by excepting from the open meetings policy "pending" litigation, to prevent any private consultation with an attorney as to foreseeable litigation, for this would, in our view, result in the untenable further conclusion that a potential private adversary was intended to have a litigious advantage over the public. This result would not be in the public interest and would be contrary to the policy that legislation is to be for the public advantage. It would further confront another publicly stated policy, that private communications with one's attorney are privileged to the extent necessary for attorneys to have all of the information necessary to do their job professionally. This clearly requires a respecting of confidence so that they may stand on an equal strategic footing with adversary counsel.

We are aware that as a rule of statutory construction the expression of certain exceptions in the statute is intended to be an exclusion of all others, but this principle will not be applied where it would defeat the plainly indicated purpose of the law-making body. (*City Savings Association v. International Guaranty & Insurance Co.* (1959), 17 Ill.2d 609, 612.) It is a reasonable possibility that the General Assembly did not include a reference to prospective litigation in the exceptions because it may have assumed that the advance consultation with an attorney was not a "meeting" of the governmental body and thus not covered by the Act.

In *People ex rel. Cooper v. Carlson* (1975), 28 Ill.App.3d 569, 572, 328 N.E.2d 675, we recently held that "voluntary meetings, conferences, * * * of department heads or employees who seek to improve with dispatch their performance or function of assisting in the conduct of the people's business" were not "meetings" as that term is used in the Open Meetings Act.

■■ It should be noted that section 2 of an act in relation to "meetings" states:

> "This Section does not prevent an advisory committee appointed to provide a public body with professional consultation on matters germane to its field of competence from holding a closed session to consider matters of professional ethics or performance." (Ill. Rev. Stat. 1973, ch. 102, par. 42.)

Similarly, we conclude that the legislature did not intend that consultations between the governing body and its attorney must always be conducted openly, when this could result in the public being placed at a litigious disadvantage. We conclude that advance consultation with its attorney is not a "meeting" of the governmental body as contemplated in the Act and thus is not covered by the Act. This interpretation gives to legal consultation on prospective litigation the same limited confidentiality that is given under the Act to pending litigation. See *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors* (1968), 263 Cal.App.2d 41, 55-57, 69 Cal. Rptr. 480, 490-491. See also *Times Publishing Co. v. Williams* (Fla. App. 1969), 222 So. 2d 470, 476-477; *Channel 10, Inc. v. Independent School District No. 709* (1974), 298 Minn. 306, 215 N.W.2d 814, 825-826.[7]

■■ This does not mean, of course, that consultations by a governing body with an attorney in private may be used as a device to thwart the liberal implementation of the policy that the decision-making process is to be open and that confidentiality is to be strictly limited. The balance between the two must always be resolved in the public interest on a case-by-case basis.

The circumstances of this particular case illustrate, we believe, a clear case of a lack of need for confidentiality. The defendants were obviously not seeking to consult privately with their attorney, nor were they meeting to discuss prospective litigation, since the developer and his attorney were also present. The policy protecting to some extent communications between lawyers and clients has no real application under these facts, and the public's right to know in an open meeting may not be thwarted on that basis alone.

Defendants next contend that they were improperly made defendants in this action. They argue that they did not meet as a "committee" and, since only two of the five city council members were present at the executive session, that they lacked the capacity to meet as the city council.

The Act places the duty to hold open meetings on any "legislative, executive, administrative or advisory bodies of the * * * cities * * * and any subsidiary bodies * * * not limited to committees and subcommittees * * *" (Ill. Rev. Stat. 1971, ch. 102, par. 42.) This duty is not dependent upon the presence of a quorum at these meetings or limited to the transaction of official business. The Act merely states

---

[7] Because the statutes vary in their terms, authorities interpreting different statutes must be qualified. The cited cases appear to represent the majority view. Contra, see *Laman v. McCord* (1968), 245 Ark. 401, 405, 432 S.W.2d 753, 755.

that, when any of these bodies meet, their meeting shall be open to the public unless the matters they are discussing are exempted.

██ In view of the fact that the Act does not limit its application to meetings at which official action is or may be taken, and in view of the policy of the Act that the deliberations of public bodies be conducted openly, we conclude that if the city council of Wheaton was under a duty to make the meeting of November 6, 1972, open to the public that this duty devolved upon each of the council members since each council member who participates in a closed meeting in violation of the Act is criminally liable. (See Ill. Rev. Stat. 1971, ch. 102, par. 44.) In the case before us, however, the defendants were the only two members of the council who attended this meeting. Thus, in this action which began in mandamus they were the only necessary parties. Only those parties who have not performed a duty required by law are necessary parties to a mandamus proceedings. See *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, 291.

██ The defendants further contend that the Open Meetings Act did not apply to Wheaton at the time of the meeting in question because Wheaton was a home-rule unit under the 1970 Illinois Constitution. They reason that the Open Meetings Act, having been passed prior to the 1970 Illinois Constitution, cannot restrict the powers of a home-rule unit lacking an express statement to that effect in the Act. We will not review this issue nor discuss the case cited by the defendants (*Rozner v. Korshak* (1973), 55 Ill.2d 430) or that cited by the plaintiff (*People ex rel. Brenza v. Fleetwood* (1952), 413 Ill. 530),[8] because we have concluded that the issue has become moot. By an amendment effective October 1, 1973, the Open Meetings Act was changed to state in substance that its provisions constitute minimum requirements for home-rule units subject to the power of those units to prescribe more stringent requirements by ordinance. (Ill. Rev. Stat. 1973, ch. 102, par. 46.) Since the Act unquestionably applies to home-rule units now, it would serve no purpose to determine this issue. See *Illinois News Broadcasters Association v. City of Springfield* (1974), 22 Ill.App.3d 226, 228.

The next contention of the defendants, that their equal protection rights were violated by the alleged selective enforcement of the Act, is not properly before us. Defendants claim that although they were given no criminal or civil penalties that they have suffered damage to their

---

[3] See *Kanellos v. County of Cook* (1972), 53 Ill.2d 161, *People ex rel. Hanrahan v. Beck* (1973), 54 Ill.2d 561, 565, which we consider more relevant. Also see generally Baum, *A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict*, 1972 U. Ill. L.F. 559, 581.

reputations as public servants because of their participation in an alleged illegal meeting. We conclude that this issue was not presented to the trial court and has therefore been waived in this appeal. See *Shaw v. Lorenz* (1969), 42 Ill.2d 246, 248.

Finally, in the view we have taken of the case we conclude that the judgment of the trial court is supported by the evidence and not against its manifest weight as contended by the defendants. The duty of the defendants to hold an open meeting is clear under the Act. The fact that the duty was applicable to the executive session in question is supported by the deposition of defendant Brown as to the nature of the subjects discussed which was not contradicted. The judgment of the trial court is therefore affirmed.

Affirmed.

GUILD and HALLETT, JJ., concur.