DAVID GOSNELL *et al.*, Plaintiffs-Appellants, v. KELLY HOGAN *et al.*,
Defendants-Appellees.

Fifth District   No. 5—87—0554

Opinion filed January 24, 1989.

Robert B. Hoemeke and Mary B. Schultz, both of Lewis & Rice, of St. Louis, Missouri, for appellants.

William W. Schooley, of Law Offices of William W. Schooley, of Granite City, for appellees.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

This appeal is from a judgment entered July 2, 1987, in the circuit court of Madison County, denying plaintiffs' motion for preliminary injunction and petition for permanent injunction to prohibit defendants from continuing their alleged violations of the Open Meetings Act (Ill. Rev. Stat. 1987, ch. 102, pars. 41 through 46).

This action was initiated by plaintiffs David Gosnell and East Side Publications. East Side Publications is a publisher of a newspaper circulated in and near Granite City, Illinois, and David Gosnell is a reporter for the newspaper. The defendants are members of the Board of Education for Community Unit School District Number 9, with the exception of Gilbert Walmsley, who is the superintendent of schools. Plaintiffs filed suit seeking to enjoin defendants from holding closed meetings during which defendants allegedly discussed topics not within the exceptions enumerated in the Open Meetings Act.

During the school year, the Board of Education for Community Unit School District Number 9 (hereinafter the Board or Board of Education) holds regular public meetings on the first and third Tuesday of every month. Additional meetings are arranged when necessary. A written agenda is made available to the public prior to each meeting, whether regular or special. Each agenda makes reference to executive sessions, providing in general terms that during executive session, if necessary, the Board will discuss personnel, negotiations and legal matters. The executive sessions may occur as part of either a regular meeting or a special meeting. In either case, the executive sessions are not open to the public and often last longer than that portion of the meeting which is open to the public. Plaintiffs bring into issue three separate meetings, held on December 16, 1986, January 20, 1987, and February 3, 1987, in support of their claim that the bulk of the business undertaken by the Board of Education is executed during closed sessions in violation of the Open Meetings Act.

The first meeting at issue occurred on December 16, 1986. A special meeting was scheduled for this date to discuss the issuance of bonds and an amendment to the district's tax levy. During the open portion of this meeting, the employment of a certain architect was brought into issue, but was not discussed in detail because it was considered appropriate to hold the discussion of this matter for closed session. When the Board of Education voted to retire into executive session, plaintiff David Gosnell, who was attending the meeting in his capacity as a reporter, objected to the Board of Education's closed discussion concerning the hiring of an architect and stated that he considered this a violation of the Open Meetings Act. Gosnell's objection notwithstanding, the Board continued the meeting in executive session.

During the executive session on December 16, 1986, which lasted approximately 2 hours and 30 minutes, the Board and superintendent discussed several topics, two of which are brought into issue in this appeal. The first topic objected to by plaintiffs is the Board's discussion of an architect hired to perform services for the school. The Board's discussion focused on problems concerning work previously performed for the school by an incorporated architecture business located in Granite City, Illinois. The Board discussed whether, in performing the services under a given contract, the architecture business had completed all services for which it was hired, and whether it had done so within the time provided in the contract.

The relationship established between the school and the architecture business is such that the architecture business does not work ex-

clusively for the school district, although the school entered into several contracts with this architecture business between 1960 and 1980. In performing the services under a contract with the school district, the owner of the architecture business retains complete control over the design of the particular project. During the evidentiary hearing on plaintiffs' motion to enjoin defendants' compliance with the Open Meetings Act, the owner of the architecture business testified that in performing his services, he does not work under the supervision of any other party.

In ruling on whether the discussion of the architecture business' performance of its contracts was appropriate for executive session, the trial court found that the architecture work was discussed and evaluated by the Board in conjunction with the discussion of whether the architecture business' service should be retained for future developments. During executive · session, the district director of school grounds and maintenance expressed to the Board some dissatisfaction with the work being performed by the architecture business. The trial court ruled that this was not a violation of the Open Meetings Act because it was within the exception enumerated in section 2 of the Act, which provides that information regarding appointment, employment or dismissal of an employee or officer may be considered in closed session. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The second topic plaintiffs contend was improperly discussed by the Board during the closed portion of the meeting held on December 16, 1986, is the policy goals and proposed evaluation of Superintendent Walmsley. During executive session, an evaluation form used in another school district was distributed among members of the Board to be used as a guideline in evaluating the superintendent's goals. The trial court found that the evaluation form was discussed by the Board in expectation of further evaluations of Walmsley's performance as superintendent of schools, and held this was not prohibited by the Act as it fell within the exception of the Act pertaining to discussion of the employment or dismissal of employees. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The second Board meeting at issue in this appeal was held on January 20, 1987. At this meeting, the agenda enumerated 41 items for consideration. During the open portion of the meeting, approximately seven items were held for executive session. The minutes of the meeting indicate that approximately 16 topics were discussed during executive session. Plaintiffs contend that eight of the topics considered in closed session should not have been so considered; instead, these eight topics, according to plaintiffs, should have been discussed in a meet-

ing open to the public. The eight contested topics are as follows:

    (1)  Contract with the Granite City School of Beauty Culture;

    (2)  In-service teacher training program;

    (3)  Continuing education requirement for administrators;

    (4)  Policy change for reimbursement of teachers' seeking further education;

    (5)  Recall rights of dismissed teachers;

    (6)  Enrollment statistics from 1967 to 1987;

    (7)  Hiring of speaker; and

    (8)  District staff needs.

Beginning with the first topic listed above, plaintiffs contend defendants again violated the Open Meetings Act when they discussed in executive session the terms of a contract the school has with the owner of Granite City School of Beauty Culture. Specifically, defendants reviewed and discussed a memorandum prepared by the district director of vocational and career education which listed various beauty schools in the area and their fees for teaching students from various school districts. Since 1969 or 1970 Granite City School District has entered into annual contracts with Granite City School of Beauty Culture (hereinafter the beauty school) whereby the beauty school agrees to teach high school students beautician skills. Under the contract in existence on January 20, 1987, the students from the school district attend classes at the beauty school along with regular students of the beauty school. The school district does not dictate or retain daily control of the instruction given to the high school students at the beauty school, although the beauty school staff takes attendance, reports absentees and grades the performance of the high school students it agrees to teach.

The memorandum discussed by defendants in executive session was not a summary of bids from other beauty schools and was to be used for comparison only. The owner of the beauty school had requested a substantial increase in the amount paid for each student instructed. The trial court found that the district director of vocational and career education and an attorney representing the school district negotiated an agreement with the owner of the beauty school outside the Board's closed meeting, and then returned to the closed meeting and explained the agreement. The Board approved the agreement in open session. The trial court ruled that the discussions during executive session concerning the renewal of the contract with the beauty school fell within the exception in the Act pertaining to the appointment, employment or dismissal of an employee or officer. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The second topic plaintiffs argue should not have been discussed during the executive session on January 20, 1987, is a program of instruction on effective teaching. The discussion of the proposed program was of a general nature and did not relate to any teachers in particular. The school district desired an amendment to its agreement with the teachers' union requiring nontenured teachers to perform in-service training. The Board and the school administration discussed such an amendment during executive session. The trial court found that the Board instructed the administration to prepare a memorandum proposing an amendment to the agreement between the school district and the teachers' union. No final action was taken at this time because the amendment proposed by the administration was subject to the approval of the teachers' union and the school district. The trial court ruled that the discussion of this topic in executive session was consistent with the Open Meetings Act. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The next topic alleged to have been improperly discussed during the January 20, 1987, executive session is whether the Board should require school district administrators to acquire a certain number of hours of continuing higher education. Although certain administrators were identified, and their qualifications discussed, the proposal itself was general in nature and included all persons in administrative positions. Again, the trial court found this discussion consistent with the Act in that it related to the appointment, employment or dismissal of an employee or officer. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The next topic plaintiffs considered inappropriate for executive session is a tuition reimbursement program which obligates the school district to reimburse teachers the expense of enrolling in college courses, provided the teacher receives a specified grade. Although individual teachers were named during the discussion, the program was discussed primarily in general terms. Superintendent Walmsley testified during the evidentiary hearing that under a new article in the contract between the teachers' union and the school district, only teachers attending classes taught at Southern Illinois University at Edwardsville would be reimbursed. This created a problem for some teachers who were already enrolled at other schools and would be forced either to attend Southern Illinois University at Edwardsville or forfeit any tuition reimbursement. The Board discussed during executive session the possibility of extending the life of the prior agreement which reimbursed tuition paid to other schools. This would apply only to five or six teachers who were then enrolled in programs at other universities, and only so long as they remained in the same program.

The trial court held that the discussion of tuition reimbursement fell within two exceptions provided in the Open Meetings Act. In addition to the exception for discussions relating to the appointment, employment or dismissal of an employee or officer, the court ruled that this also fell within the exception for collective negotiations between a public employer and its employees. Ill. Rev. Stat. 1987, ch. 102, par. 42.

In the same executive session, the Board discussed the recall rights of five teachers who were offered teaching positions for one semester rather than on a full-time basis. The district and the teachers' union had previously negotiated a method of recalling teachers based on the relative seniority of teachers who had been honorably dismissed for economic reasons. Five of the teachers so dismissed were recalled on a part-time basis. The teachers' union threatened to initiate a grievance procedure on behalf of the five teachers recalled on a part-time basis. During executive session, the Board and the school district administration discussed the employment of the five teachers, and the administration explained to the Board the administration's dispute with the teachers' union. At that time, the administration presented a proposed amendment to the existing agreement under which the teachers worked. This proposed amendment was approved after the Board returned to open session. The trial court held that the discussion of recall rights fell within the "appointment, employment or dismissal of employee or officer" exception in the Act, and the "collective negotiating matters between public employers and their employees or representatives" exception in the Act. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The sixth topic alleged by plaintiffs to have been inappropriate for executive session at the January 20, 1987, meeting is the Board's discussion of school enrollment statistics from 1967 to 1987. Superintendent Walmsley testified that the statistics were considered in assessing the school district's future property needs. The trial court found that the statistics were discussed in relation to a possible sale of school property and ruled that this fell within the exception provided in the Act for meetings where the acquisition of real property is being considered or where the selling price of real estate is being considered by the school board of a public school district. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The next contested topic is the discussion of whether to hire a speaker to make a presentation to the teachers of the school district entitled "Positive Things About Teaching." The proposed speaker was not an employee of the school district. The trial court held that the

Board's discussion of this topic during executive session was a violation of the Act and ruled that this violation was unintentional and of minor importance to the overall operation of the school district.

The final contested topic discussed at the January 20, 1987, meeting is the needs of the district staff. During closed session, Superintendent Walmsley and the Board discussed expected vacancies in certain staff positions and the need to fill those vacancies. The possibility of upgrading certain noncertified teachers to certified status was discussed, with individual teachers being identified and discussed by name. The court held that this discussion fell within the exception in the Act for appointment, employment or dismissal of an employee or officer. Ill. Rev. Stat. 1987, ch. 102, par. 42.

Continuing with the third Board meeting at issue in this appeal, plaintiffs allege that certain topics discussed during the executive session of a regularly scheduled meeting held on February 3, 1987, meeting were discussed in violation of the Open Meetings Act. Similar to the previous meetings, the agenda of this meeting referred to an executive session wherein the Board would discuss any personnel, negotiations or legal matters as necessary. Of the 38 items enumerated in the agenda for Board consideration, four were held for executive session. Plaintiffs contend that the following topics should not have been discussed in closed session:

(1) Manpower study;

(2) Proposal to prohibit administration communication with the news media;

(3) Request for mediation with teachers' union; and

(4) Extension of contract with bus company.

Taking these topics in the order listed, the Board discussed a memorandum prepared by district administrators which recommended the transfer of certain personnel within the administrative staff. The circuit court found that this discussion involved the consideration of qualifications, personalities and skill levels of certain individuals, and therefore the discussion was appropriately undertaken during executive session. In addition to the exception for discussions of "appointment, employment or dismissal of an employee or officer," the court noted that the discussion also came within the exception allowing testimony on a complaint lodged against an employee or officer to determine its validity. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The second topic listed began as a discussion of a special education student enrolled in a Granite City school. After discussing the student, the Board discussed the negative effects that might result from revealing to the media the discussion of the special education

student. This developed further into a discussion of recent confrontations between members of the school administration and the media. These confrontations interrupted the work of the school administrators who were questioned by the media, and one Board member suggested that administrators be prohibited from talking to the news media without having the media first consult the superintendent of schools. This proposition was rejected by the Board. The trial court held that the discussion of media contacts with the school administration fell within the exception of the Act regarding the appointment, employment or dismissal of an employee or officer, and another exception in the Act which frees from the open action requirement discussion regarding "litigation when an action against, affecting, or on behalf of the particular public body has been filed and is pending in a court or administrative tribunal, or when the public body finds that such an action is probable or imminent." Ill. Rev. Stat. 1987, ch. 102, par. 42.

The next contention brings into issue the Board's decision to request mediation with the teachers' union. During the February 3 executive session, the administration explained to the Board the advantages and disadvantages of such mediation. During executive session, and without ratification during subsequent open session, the Board agreed to make a joint request for mediation. The trial court held that the Board's decision to request mediation was not a final action within the realm of the Open Meetings Act and ruled that the discussions fell within the collective negotiating exception provided in the Act. Ill. Rev. Stat. 1987, ch. 102, par. 42.

The final topic alleged to have been inappropriate for discussion during executive session is the school district's contract with a bus company. During the February 3 executive session, the superintendent and Board discussed the advantages and disadvantages of extending an existing contract between a bus company and the school district. The Board and superintendent decided to extend the then existing contract rather than accept bids from other companies. The trial court recognized that public knowledge of this decision would be disadvantageous to the school district when it negotiated with the bus company. The court ruled that this discussion fell within the appointment, employment or dismissal of an employee or officer exception of the Act. Ill. Rev. Stat. 1987, ch. 102, par. 42.

In addition to the numerous topics we are asked to consider as allegedly having been inappropriately discussed during executive session, plaintiffs also contend that defendants failed to comply with the procedural requirements under the Act. In holding an executive ses-

sion pursuant to the exceptions enunciated in the Open Meetings Act, it is necessary to abide by the procedural dictates of the Act. Plaintiffs assert that the three meetings discussed above are typical of all Board meetings and violative of the Act in the following measures:

(1) The Board adjourned from each open meeting and went into executive session by referring during open session to "personnel, negotiations, and legal matters." The subjects which the Board had voted to be held for executive session were not repeated specifically.

(2) Topics which the Board did not specifically vote to be held for executive session were considered during executive session.

(3) The exceptions of the Act, pursuant to which the Board discussed matters in executive session, were not cited during the open portion of the meeting.

(4) The executive sessions last at least as long, and usually longer, than the open portion of the meeting of which they are a part.

(5) The Board reaches decisions by consensus during executive session, without a formal roll call vote, and acts on that decision without making reference to or offering ratification of its executive session deliberations and decisions after returning to open session.

(6) Following the Board's closed meetings, the discussions undergone during a closed meeting are not revealed to the public.

The first issue we are asked to consider is whether the trial court erred in liberally construing certain exceptions provided in the Act. The court held that the exceptions encompass matters collateral to the specifically excepted subjects, so long as those matters are relevant to, bear on, and are incidental to the specifically excepted subjects. It is the plaintiffs' contention that this interpretation emasculates the Act and is contrary to public policy, case law, and the express language of the Act. We disagree.

■ The cardinal rule of statutory construction is that a statute must be construed so as to give effect to the legislative intent. (*People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 536, 332 N.E.2d 649, 658.) Statutes must be given sensible interpretation by the courts, and a strict construction means only that it must be confined to such subjects or applications as are obviously within its terms and purposes, and it does not require such an unreasonably technical construction that the words used cannot be given their fair and sensible meaning in accord with the obvious legislative intent. (*DuBois v. Gib-*

*bons* (1954), 2 Ill. 2d 392, 410-11, 118 N.E.2d 295, 305.) The Open Meetings Act provides that public agencies exist to aid in the conduct of the people's business and that the intent of the Act is to assure that agency actions be taken openly and that their deliberations be conducted openly. Ill. Rev. Stat. 1987, ch. 102, par. 41.

■ While we are aware of the ruling that the exceptions allowing closed meetings must be narrowly construed because they derogate the general policy of open meetings (*Illinois News Broadcasters Association v. City of Springfield* (1974), 22 Ill. App. 3d 226, 228, 317 N.E.2d 288, 290), we do not consider it judicious to apply this ruling blindly and technically such that every instance wherein a public body's actions do not fall squarely within the language of the exceptions provided in the Act constitutes a violation of the Act. Instead, the language of the Act, and the intent of the legislature expressed therein, must be interpreted and applied on the facts of each case. See *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 538, 332 N.E.2d 649, 660.

While we keep in mind that the purpose of the Act is to promote the openness of public business, we must not overlook the larger, overriding purpose of the Act within which the promotion of openness is subsumed and made a constituent part—aiding the conduct of the people's business, or, in other words, securing public advantage. (*People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 332 N.E.2d 649.) In promoting the ultimate goal of requiring public bodies to carry out their business in the manner most beneficial to the public they represent, there are occasions on which it is not to the public's advantage that a public body carry on its business in a meeting open to the public. Therefore, it is not always possible for both of the above-stated purposes of the Act to be promoted in harmony. It is our belief that where the purposes of the Act cannot be promoted in harmony, priority should be given to the more dominant or overriding purpose.

This is particularly true in the instant case, where the purpose of promoting openness is not separate and distinct from the overriding purpose of promoting the ultimate goal of public advantage. Openness is in most circumstances an element fundamental in furthering public advantage; however, in some instances openness simply prevents or defeats public advantage.

For example, consideration of topics concerning matters such as personal information, bargaining position and negotiating strategy makes it necessary that a public body meet in private, lest it run the risk that the business undertakings will be rendered, for all practical

purposes, ineffective and meaningless. Public knowledge of their officials' intentions and actions resulting from compulsory public deliberative sessions when considering matters such as the purchase of real estate would destroy any advantage to be gained from negotiation and work a severe detriment upon the officers and the public they represent. (*Collinsville Community Unit School District No. 10 v. Witte* (1972), 5 Ill. App. 3d 600, 603, 283 N.E.2d 718, 720-21.) Likewise, forcing public officers to discuss sensitive issues in meetings open to the public may result in these topics being intentionally overlooked, at the public's expense. Premised by a familiarity with the common use of discretion which results in many sensitive issues being better left alone, especially when the audience is large and confidence is wanting, consider the negative effects resulting from open discussion of personal problems that might impede upon the work place of a public office, such as alcohol abuse, tardiness, poor hygiene or cigarette smoking. While these problems might be resolved if the appropriate public body were able to discuss the matter freely, it is unlikely that this will occur when such matters cannot be discussed in confidence. As a result, work quality continues to wane, at the public's expense.

Restricting public officials' ability to discuss sensitive issues freely may also breed contempt. The supreme court in *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 414 N.E.2d 731, recognized that there are obvious problems of enforcement inherent in the Act. (83 Ill. 2d at 202, 414 N.E.2d at 735.) The facts in *Difanis* can be summarized, for the limited purpose of this discussion, as a city council holding an informal caucus prior to a regularly scheduled meeting in order to discuss some of the matters which were to be considered at the upcoming meeting. A dispute over whether the informal caucus was actually a meeting within the scope of the Act ensued. In confronting the problem of determining what constitutes a "meeting" in terms of the Act, the *Difanis* court quoted *Sacramento Newspaper Guild, Local 92 v. Sacramento County Board of Supervisors* (1968), 263 Cal. App. 2d 41, 50-51, 69 Cal. Rptr. 480, 487, which stated in part that " '[a]s operative criteria, formality and informality are alien to the law's design, exposing it to the very evasions it was designed to prevent.' " (83 Ill. 2d at 200, 414 N.E.2d at 734.) In *Difanis* the supreme court ruled that, regardless of the informal or formal appearance, officials are required, pursuant to the Act, to speak of public business with their fellow officials only when they are in an open forum. (83 Ill. 2d at 210, 414 N.E.2d at 739.) The supreme court adopted the reasoning of the appellate court in *Difanis* in holding that public officials' desire

to consult privately must give way to the open conduct of the public's business "or else the people risk having their business done in secret, with the possibility that private deals will supplant the public interest." 83 Ill. 2d at 211, 414 N.E.2d at 739, citing *People ex rel. Difanis v. Barr* (1979), 78 Ill. App. 3d 842, 845, 397 N.E.2d 895.

In the case before us, we are not asked to consider whether the school Board evaded the proscriptions of the Act by meeting informally, but rather, whether the Board violated the Act by discussing during executive session matters not excepted in the Act, and whether the Board failed to comply with the formal requisites of the Act. We are cautious to observe and protect the same public interest that the dictates of *Difanis* place in high regard, and we interpret the Act such that its application will not choke and inhibit the Board to the extent that its duties cannot be fulfilled. We recognize the delicate balance between interpreting the Act too broadly, thereby running the risk that the public interest will take second seat to the interest of private individuals, and interpreting the Act too narrowly, thereby overwhelming the public officials with time-consuming formalities and public exposure in sensitive areas. Therefore, we agree with the holding that the Act only requires that a public body "substantially" comply with the Act's provisions (*Argo High School Council of Local 571, IFT, AFT, AFL-CIO v. Argo Community High School District 217* (1987), 163 Ill. App. 3d 578, 583, 516 N.E.2d 834, 837.) Accordingly, we are unable to find that the trial court erred in not interpreting the Act in the strict manner proposed by plaintiffs.

■ Turning to other issues raised by plaintiffs, we are unable to find that the trial court erred in interpreting the term "employee" as used in the exceptions provided in the Act. (Ill. Rev. Stat. 1987, ch. 102, par. 42.) Plaintiffs contend that the court erred in interpreting "employee" to include independent contractors. Construing the Act and the exceptions provided therein, giving plain and sensible meanings to the words used by the legislature, and interpreting the Act's provisions consistently with the expressed intention of the legislature, we find that the exception providing that closed meetings are permissible to consider information regarding appointment, employment or dismissal of an employee or officer may properly be interpreted to include independent contractors where the facts of a given case make such a determination consistent with the underlying intention of the Act.

The Act does not elaborate qualifications or definitions for determining whether someone is an employee or officer. Strictly construed in a legal sense, the term employee does not include independent con-

tractors, and the two classifications may be distinguished by considering the manner and method in which anyone so classified performs the duties for which they are hired. (*Kouba v. East Joliet Bank* (1985), 135 Ill. App. 3d 264, 481 N.E.2d 325.) However, we find it unnecessary in the present case to delve into a determination of whether certain speakers, architects, beauty school operators and other persons hired by the school district performed services in the capacity of employee or independent contractor. Instead, we focus on the intention of the legislature in excepting discussions of matters relating to employment and decide whether the legislature intended a strict legal construction of the term employee so as not to include independent contractors.

In the instant case, we are not persuaded that there exists a compelling reason to distinguish between an employee and an independent contractor for purposes of determining whether the Board may properly discuss in closed session the hiring, performance or other matters relating to a person or persons in either classification. In balancing the public's right to know against the Board's need to discuss matters in confidence, we find that the narrow, legal definition of employee urged by plaintiffs is inconsistent with the rule that in construing a statute the words must be given their fair and sensible meaning in accord with the legislature's intent. Taking a more workable approach, we find that the legislature did not intend to exclude independent contractors from the exception providing for discussion of information regarding the appointment, employment or dismissal of employees. The need to discuss in privacy the hiring and performance of an independent contractor is generally the same as that for any other employee. In fact, because an independent contractor may be hired relatively frequently, and usually under a new and separate contract for each job, there is arguably a greater need to preserve confidence in discussing such hiring because each contract may be approached with a varied strategy, whereas, on the average, there is less need for negotiating strategy when hiring personnel. Therefore, we are unable to find that the court erred in finding that the exception for employees and officers also applies to independent contractors under the facts of this case.

The next issue raised by plaintiffs is that the court erred in concluding that the superintendent and board did not violate the Act when they considered during executive session educational goals, policy and programs and school district statistics. Plaintiffs argue that the host of policy issues that were discussed in executive session related to the conduct of the people's business and therefore should

have been discussed in open session. Superintendent Walmsley testi-fied at the evidentiary hearing conducted in the trial court that he and the Board discussed in executive session his goals as superintend-ent. Because the district had been in turmoil for over a year, goals were set for the superintendent's office in attempt to improve his per-formance and relationship with the school district in general. Plain-tiffs concede that, because Walmsley is an officer of the school dis-trict, the discussion of matters relating to his employment may be held in executive session. Plaintiffs dispute the propriety of the for-mulation during executive session of general policy, such as the goals of the superintendent's office. Plaintiffs assert that even if discussion of the superintendent's goals arose in the context of an evaluation of Walmsley's particular job performance, the Act requires that only those portions of any meeting expressly enumerated in the exceptions to the open meeting requirement may be discussed during executive session. Therefore, according to plaintiffs, the discussion of the super-intendent's goals should have been separated from any particular complaint regarding Walmsley's performance and discussed in open session.

In another subject falling under this issue, plaintiffs argue that the exception for "collective negotiating matters" must be limited to preparation by the Board for actual negotiations with the various un-ions; the possibility that unions may take advantage of information re-vealed in open meetings is irrelevant. The possibility that matters dis-cussed during open session may be used by the unions to the people's detriment is very relevant in considering whether the legislature in-tended that particular topics be discussed openly.

Further, not only would such a strict interpretation of the Act work to the public's disadvantage, thereby undermining the intentions of the Act, it also results in time-consuming technicalities for which the benefit does not offset the burden. Common experience dictates that discussions of matters relating to complaints against an officer and goals developed in attempting to resolve the complaints can be-come one and the same. An attempt to discuss only the complaints in closed session and then the proposed goals in open session would be tedious and frustrating when the goals are in direct response to and interrelated with the complaints they are intended to resolve. In order to discuss the goals effectively, it is necessary to consider simultane-ously the complaints which prompted the need for the goals. The com-plaints present problems, and the goals the intended solutions. Forc-ing the Board to discuss the solutions in public would result in one of two equally unfavorable outcomes. First, the Board would run the

risk of exposing personal information regarding the superintendent to the public. In discussing the solutions in public, it is likely that reference will be made to the problems. Second, if the Board were to attempt discussion of the solutions without making reference to the problems, the discussion would be inhibited by the precaution given to avoiding the mention of confidential information in public. Neither of these results is consistent with the Act's purpose of protecting the public's business and therefore should not be promoted.

■ Plaintiffs' next issue presented to this court is that the trial court erred in finding that a joint request for mediation was not a final action under the Act. In their closed meeting on February 3, 1987, the Board and superintendent discussed the advantages and disadvantages of engaging in mediation to resolve an impasse in contract negotiations between the Board and the secretaries' union. Plaintiffs argue that this constituted a "final action" within the contemplation of the Act and should have been discussed in open session, or, at a minimum, reported as a final action in open session. We disagree.

The section of the Act which enumerates the exceptions to the open meeting requirement also expressly states that no final action may be taken at a closed meeting. (Ill. Rev. Stat. 1987, ch. 102, par. 42.) In the instant case, the Board chose mediation as an alternative to unsuccessful negotiations with the secretaries' union. The circuit court found this to be within the exception for discussion of "collective negotiating matters between public employers and their employees or representatives." (Ill. Rev. Stat. 1987, ch. 102, par. 42.) Plaintiffs argue to the contrary that the Board's decision to request mediation was unilateral and not a collective negotiation falling within this exception. We agree with the circuit court and find that the request for mediation was part of the process of reaching a final action with the secretaries union. Mediation, similar to negotiating, is not an end in itself, but rather, a means to an end. Negotiations and mediations are made up of many "unilateral" decisions, such as what to offer or counteroffer, and to hold that each of the unilateral strategical decisions that make up the constituent parts of a negotiation is in and of itself a final action is unreasonable.

■ Next, plaintiffs argue that the court erred in holding that the superintendent and Board did not violate the Act when it discussed whether to prohibit district administrators from speaking with the media. The underlying action was initiated on January 28, 1987, and the allegedly violative discussion was had on February 3, 1987. Plaintiffs contend that the trial court wrongfully categorized this discussion under the exception for discussion of "litigation when an action

against, affecting, or on behalf of the particular body has been filed and is pending in a court or administrative tribunal." Although the discussions were of a general nature, attending to the relationship between the newspaper and the Board and attempting to resolve plaintiffs' attempts to question school administrators, we find that a fair interpretation of the Act brings these discussions within the exception of the Act.

The final issue requires that this court determine whether the Board failed to comply with the procedural requirements of the Act. We find that the Board substantially complied with the Act consistent with Illinois law. (*Argo High School Council of Local 571 IFT, AFT, ALF-CIO v. Argo Community High School District 217* (1987), 163 Ill. App. 3d 578, 516 N.E.2d 834; *Williamson v. Doyle* (1983), 112 Ill. App. 3d 293, 445 N.E.2d 385.) For example, plaintiffs complain that the Board's inclusion in the agenda preceding each meeting of a general reference to "Executive Session—personnel, negotiations and legal matters" is insufficient to give notice to the public of what topics will be discussed during closed session. However, the Act does not require notice in the agenda of topics to be considered in closed session. The Act provides:

> "At any open meeting of a public body, for which proper notice under this Act has been given, the body may, without additional notice under Section 2.02, hold a closed meeting in accordance with this Act. Only topics specified in the vote to close under this Section may be considered during the closed meeting." (Ill. Rev. Stat. 1987, ch. 102, par. 42a.)

According to the record, the topics to be discussed in closed session were included in the minutes of each meeting prior to the Board's voting to go into closed session. In instances when a topic not specifically held for closed session was discussed during closed session, the relationship between the items held for closed session and the items not specifically held for closed session is such that the Board's discussion of these items is in compliance with the Act. It is to be expected that during the discussion of a given topic, other related topics germane to the primary topic may be brought into discussion. In instances when a related topic plays an integral part in the discussion of the original topic to be considered in closed session, business practicality and efficiency dictate that the related topic be discussed along with the primary topic. For example, the trial court held that school enrollment statistics, a topic not falling within any exception to the Act, could be discussed during closed session when discussed collateral to the discussion of offers to purchase real estate—a topic ex-

cepted under subsection (c) of section 2 of the Act. This section provides that "meetings where the acquisition of real property is being considered or where the selling price of real estate is being considered by the school board of a public school district" need not be open to the public. Ill. Rev. Stat. 1987, ch. 102, par. 42.

Construing the exceptions to the Act applying the fair and sensible statutory interpretation stated in *DuBois* above, and applying the substantial compliance requirement stated in *Argo*, we are unable to find merit in plaintiffs' arguments, and we therefore affirm the judgment of the trial court.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

HARRISON and GOLDENHERSH,* JJ., concur.

---

*Justice Goldenhersh replaces Justice Calvo, who was elected to the Illinois Supreme Court after this cause was taken under advisement.